# EXHIBIT B

Submitted by:

Yun Peng

965 Hutchinson Ave Palo Alto, CA 94301

(All events occurred in San Francisco; this is merely the plaintiff's mailing address.)

Phone:+1 669-329-7691

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/09/2024**
**Clerk of the Court**
BY: AUSTIN LAM
Deputy Clerk

_____

# COMPLAINT

_____

SUPERIOR COURT OF CALIFORNIA

County of San Francisco

**CGC-24-617965**

    YUN PENG,

    Plaintiff,

    v.

ACI GIFT CARDS, LLC,

AMAZON.COM, INC.,

APPLE INC.,

    Defendants.

Case No.:

_____

Date: [    09/09/2024    ]

_____

1

## Catalogue

Ⅰ. Introduction or Preliminary Statement .......................................................................... 14

Ⅱ. Parties Information .......................................................................................................... 15

   1. Plaintiff ........................................................................................................................ 15

   2. Defendants ................................................................................................................... 15

Ⅲ. Jurisdiction Statement .................................................................................................... 17

Ⅳ. Litigation Background and Key Events ......................................................................... 19

   1. Background of the Case: ............................................................................................. 19

   2. Key Events: .................................................................................................................. 19

Ⅴ. Statement of Facts ........................................................................................................... 22

   1. Entry into the United States: ...................................................................................... 22

   2. Thefts: .......................................................................................................................... 22

   tanford University (May 21, 2024):The plaintiff was theft in a conference room at the prestigious Stanford University, losing all belongings except for a backpack and wallet. This incident shocked the plaintiff and significantly impacted their sense of security. .................. 22

   FedEx Store (June 24, 2024):The plaintiff was theft again at a FedEx store across from the USCIS building, losing all cash and bank cards, further eroding their trust in public safety in the United States. ............................................................................................................ 22

   3. Identity Crisis: ............................................................................................................. 23

   4. Health Deterioration: .................................................................................................. 23

2

1    5. Gift Card Purchase and Use: ................................................................ 23

2    6. Account Suspensions and Bans .............................................................. 24

3        6.1. First Suspension (June 26, 2024) ................................................. 24

4        6.2. Second Suspension (June 28, 2024) ............................................. 26

5        6.3. Third Suspension (July 20-29, 2024) ........................................... 31

6        6.4. Fourth Suspension (August 1, 2024) ........................................... 33

7    7. Eviction Incidents .............................................................................. 35

8        7.1. Past Complaints ....................................................................... 35

9        7.2. First Eviction (July 27, 2024) ...................................................... 36

10           7.2.1. Background Description .................................................. 36

11           7.2.2. Originating from Seeking Help ......................................... 36

12           7.2.3. Defamation of the Plaintiff ............................................. 37

13           7.2.4. Forced Eviction ............................................................ 37

14           7.2.5. Public Dissemination .................................................... 38

15           7.2.6. Consequences of Harm .................................................. 38

16       7.3. Second Eviction (July 31, 2024) .................................................. 38

17           7.3.1. Discriminatory Behavior ................................................. 38

18           7.3.2. Legal Definition: .......................................................... 39

19           7.3.3. Fatal Blow ................................................................... 41

3

1    7.3.4. Long-term Impact .................................................................... 41

2    8. Subsequent Events: ........................................................................... 42

3    8.1. Forced Purchase of Membership Card (July 31, 2024) ................... 42

4    8.2. Health Deterioration (August 13, 2024) ........................................ 42

5    8.3. Information Discovered During Subsequent Evidence Collection About Amazon 43

6    8.3.1. Amazon's False Advertising ..................................................... 43

7    8.3.2. FTC Lawsuit Against Amazon ................................................. 44

8    8.3.3. Unfair and Unreasonable Discretion Granted by Amazon's Terms of Service

9    ........................................................................................ 44

10    VI .   Causes of Action and Legal Violations ............................................. 47

11    1. Legal Violations by ACI GIFT CARDS, LLC .................................... 47

12    1.1. Specific Violations: ....................................................................... 47

13    1.1.1. Inadequate Information Disclosure: ......................................... 47

14    1.1.2. Deceptive Business Practices: ................................................ 47

15    1.2. Supporting Case Law: ................................................................... 48

16    1.3. Impact on Plaintiff and Consumers: .............................................. 48

17    2. Legal Violations by Amazon Services ................................................. 51

18    2.1. Contract Invalidity ......................................................................... 51

19    2.1.1. Contract Invalidity Due to Language Barrier ............................ 51

2.1.2. Impact of Mental State and Medication on Contract Validity.........................53

2.1.3. Unconscionability of Standard Form Contract........................................54

2.1.4. Duress Due to Survival Pressure ...................................................55

2.1.5. Legal Basis and Support...........................................................57

2.2. Unjust Enrichment.....................................................................58

2.2.1. Definition and Legal Basis:.......................................................58

2.2.2. Amazon's Unjust Enrichment:.......................................................58

2.2.3. Case Law Support..................................................................59

2.2.4. Conclusion and Request............................................................59

2.3. False Advertising.....................................................................60

2.3.1. Definition and Legal Basis: ......................................................60

2.3.2. Amazon's False Advertising: ......................................................60

2.3.3. Case Law Support: ................................................................61

2.3.4. Request: .........................................................................62

2.4. Tort .................................................................................62

2.4.1. Definition of Tort: ..............................................................62

2.4.2. Analysis of Amazon's Tortious Behavior ...........................................63

2.4.3. Argument for Systemic Tortious Conduct: ..........................................69

2.4.4. Conclusion and Compensation Request: .............................................70

2.5. Repeated Fraudulent Conduct...........................................................71

    2.5.1. Definition of Fraud: ...............................................................71

    2.5.2. Analysis of Amazon's Fraudulent Conduct: ......................72

    2.5.3. Argument for Systemic Fraudulent Conduct: ...................78

    2.5.4. Conclusion and Compensation Request............................80

2.6. Violation of Consumer Protection Laws: ...................................81

    2.6.1. Definition of Consumer Protection Laws: .......................81

    2.6.2. Analysis of Amazon's Violation of Consumer Protection Laws: ...............82

2.7. Deprivation of Basic Survival Rights and Violation of Humanitarian Principles......90

    2.7.1. Overview:...........................................................................90

    2.7.2. Legal Basis:........................................................................91

    2.7.3. Defendant's Actions:..........................................................91

    2.7.4. Specific Damages: .............................................................92

    2.7.5. Causation Between Violations and Damages:.....................93

    2.7.6. Supporting Case Law:........................................................93

2.8. Monopolizing the Market in Violation of the Sherman Act (15 U.S.C. § 2)............94

    2.8.1. Legal Basis:........................................................................94

    2.8.2. Supporting Case Law:........................................................95

    2.8.3. Violations:..........................................................................95

2.8.4. Specific Damages: .................................................................................. 98

2.8.5. Causation Between Violations and Damages: ........................................ 99

2.8.6. Supporting Case Law: ......................................................................... 100

2.8.7. Systemic Violation of Consumer Rights: .............................................. 101

2.8.8. Widespread Consumer Complaints and Dissatisfaction: ....................... 102

2.8.9. Support from Media Reports and Expert Testimonies: ......................... 103

2.8.10. Summary: ......................................................................................... 105

3. Legal Violations by Apple ............................................................................. 106

3.1. Violation of Contract Law, California Consumer Legal Remedies Act (CLRA), and
California Unfair Competition Law (UCL) ........................................................ 106

3.1.1. Unlawful Actions ................................................................................. 106

3.1.2. Specific Damages ............................................................................... 107

3.1.3. Supporting Case Law ........................................................................... 107

3.2. Violation of the Americans with Disabilities Act (ADA) .............................. 108

3.2.1. Overview: ........................................................................................... 108

3.2.2. Legal Basis ......................................................................................... 108

3.2.3. Unlawful Actions ................................................................................. 109

3.2.4. Specific Damages ............................................................................... 110

3.2.5. Causation Between Violations and Damages ....................................... 111

3.2.6. Supporting Case Law.................................................................111

3.3. Defamation...................................................................................112

3.3.1. Overview:.................................................................................112

3.3.2. Legal Basis.............................................................................113

3.3.3. Unlawful Actions ....................................................................113

3.3.4. Specific Damages ..................................................................115

3.3.5. Causation Between Unlawful Actions and Damages**...................116

3.3.6. Case Law Support..................................................................116

VII．  Prayer for Relief.........................................................................118

1. Request for Judgment Declaring Defendants' Actions Unlawful ...........118

2. Request for Economic Damages .....................................................118

2.1. Direct Economic Damages..........................................................118

2.2. Indirect Economic Damages........................................................119

2.3. Emotional Distress Damages.......................................................120

2.3.1. Severity of Emotional Distress ................................................120

2.3.2. Supporting Evidence ..............................................................121

2.3.3. Long-Term Impact..................................................................122

2.3.4. Case Law Support..................................................................123

2.4. Punitive Damages .....................................................................123

2.4.1. Impact on Plaintiff: .............................................................................. 124

2.4.2. Egregiousness of Defendants' Conduct: .......................................... 124

2.4.3. Violations of Multiple Laws: .......................................................... 124

2.4.4. Widespread and Systemic Issues: ................................................... 125

2.4.5. Defendants' Financial Strength: ...................................................... 126

2.4.6. Necessity of Punitive Damages: ..................................................... 126

2.4.7. Reasonableness and Proportionality of Punitive Damages: ........... 127

2.4.8. Legal Support and Precedents: ....................................................... 128

3. Injunctive Relief for Systemic Issues .................................................... 129

3.1. The plaintiff requests the court to order ACI GIFT CARDS, LLC    and Amazon to take the following actions to correct their systemic issues: ............................................... 129

3.2. The plaintiff requests the court to order Apple to take the following actions: ..... 131

4. Reinstatement of Plaintiff's Amazon Accounts ...................................... 131

5. Public Apology ......................................................................................... 131

6. Other Equitable and Appropriate Relief .................................................. 132

VIII .   Conclusion .......................................................................................... 133

IX .   Demand for Jury Trial .......................................................................... 134

X .   Anticipated Defenses and Rebuttals ..................................................... 135

1. Reasonableness and Fairness Defense ................................................. 135

9

Case No. 06944   Document 1-2   30/08/2024 Page 11 of 180   Page ID #:181

1        1.1. Defendants' Potential Argument ............................................................... 135

2        1.2. Plaintiff's Rebuttal ................................................................................... 135

3            1.2.1. Lack of Transparency and Due Process ............................................ 135

4            1.2.2. Unfair Restrictions on Evidence Submission ..................................... 136

5            1.2.3. Unreasonableness of Multiple Account Suspensions ....................... 137

6            1.2.4. Disregard for Plaintiff's Special Circumstances ................................ 138

7    2. Unintentional Conduct Defense ....................................................................... 138

8        2.1. Defendants' Potential Argument ............................................................... 138

9        2.2. Plaintiff's Rebuttal ................................................................................... 139

10            2.2.1. Unintentional Conduct Does Not Exempt Liability ............................ 139

11            2.2.2. Systemic Behavior Liability ............................................................... 139

12    3. Defense of Provision of Terms ......................................................................... 140

13        3.1. Defendants' Potential Argument ............................................................... 140

14        3.2. Plaintiff's Rebuttal ................................................................................... 140

15            3.2.1. Amazon Should Have Fully Disclosed Important Terms and User

16            Agreements: ............................................................................................... 140

17            3.2.2. Case Law Support .............................................................................. 142

18    4. All Relevant Information Provided via Link Defense .......................................... 142

19        4.1. Defendants' Potential Argument ............................................................... 142

1  4.2. Plaintiff's Rebuttal ........................................................................... 142

2  4.2.1. Legal Requirements and Definition of Material Terms:.................... 142

3  4.2.2. Visibility and Prominence of Information: ........................................ 143

4  4.2.3. Principle of Informed Consent: ........................................................ 144

5  5. Defense Against Legitimacy and Reasonableness of Account Suspension and Process 145

6  5.1. Defendants' Potential Argument............................................................ 145

7  5.1.1. Detailed Instructions and Process Defense .................................... 145

8  5.1.2. Reasonable Security Measures Defense......................................... 146

9  5.1.3. Standardized Process Reasonableness Defense............................ 146

10  5.1.4. Failure to Fulfill User Responsibilities Defense .............................. 146

11  5.2. Plaintiff's Rebuttal ............................................................................. 147

12  5.2.1. Instructions Were Insufficiently Specific ....................................... 147

13  5.2.2. Balancing Security Measures with Information Transparency......... 148

14  5.2.3. Conflict Between Standardized Processes and Individual Cases.... 149

15  5.2.4. Plaintiff Fulfilled Reasonable Burden of Proof:.............................. 150

16  6. Apple's Reasonable Business Judgment Defense ...................................... 150

17  6.1. Defendants' Potential Argument............................................................ 151

18  6.2. Plaintiff's Rebuttal ............................................................................. 151

19  6.2.1. Lack of Reasonable Explanation ................................................... 151

6.2.2. Discriminatory Treatment ......................................................... 152

6.2.3. Psychological Harm ............................................................... 152

7. Apple's Safety Policy Enforcement Defense ..................................... 153

7.1. Defendants' Potential Argument ................................................ 153

7.2. Plaintiff's Rebuttal ................................................................. 153

7.2.1. Lack of Factual Basis ........................................................... 153

7.2.2. Unfair Treatment ................................................................. 154

7.2.3. Violation of Reasonable Accommodation Obligations: ................... 155

8. Apple's Non-Discrimination Defense ............................................... 156

8.1. Defendants' Potential Argument ................................................ 156

8.2. Plaintiff's Rebuttal ................................................................. 156

8.2.1. Inconsistency in Actions: ....................................................... 156

8.2.2. Overreaction: ..................................................................... 157

8.2.3. Failure to Provide Reasonable Accommodations: ........................ 157

8.2.4. Subjective Intent vs. Objective Effect: ...................................... 158

9. Apple's Contract Performance Defense ........................................... 158

9.1. Defendants' Potential Argument ................................................ 158

9.2. Plaintiff's Rebuttal ................................................................. 159

9.2.1. Legal Binding Nature of a Clear Promise: .................................. 159

1        9.2.2. Protection of Reliance Interests: ...........................................................159

2        9.2.3. Further Damages: ...................................................................................160

3    10. Regarding the Defense of Whether the Five Images and 200-Word Limit Is Sufficient

4    ..............................................................................................................................161

5    11. Regarding the Defense of Providing a Complaint Email at the Time of Final Account

6    Suspension：...................................................................................................163

7        11.1. Regarding the Defense of Procedural Appropriateness and Legitimacy ...........166

8    12. Regarding the Defense of Plaintiff Responsibility....................................................169

9    13. Regarding the Defense of Multiple Appeal Opportunities.......................................172

10    XI．Exhibits or Appendices............................................................................................177

11    XII．Declaration Under Penalty Of Perjury....................................................................180

# I . Introduction or Preliminary Statement

This complaint is filed by the plaintiff, Yun Peng, against the defendants ACI GIFT

CARDS, LLC ,LLC, Amazon.com Inc., and Apple Inc., Seeking legal remedies for fraud,

torts, unfair practices, The plaintiff alleges that the defendants violated multiple California

state and federal laws, leading to economic loss and emotional distress. The plaintiff

requests the court to declare the contracts invalid, award damages, and address systemic

issues.

# II . Parties Information

## 1. Plaintiff

**Name:** Yun Peng

**Address:** 965 Hutchinson Ave, Palo Alto, CA 94301

**Contact Information:** +1 669-329-7691

**Jurisdiction：** The plaintiff's current mailing address is in Palo Alto; however, at the time

the events occurred, the plaintiff was residing in San Francisco. Since the events took

place in San Francisco, and many of the facts relevant to the case also occurred there, the

Superior Court of San Francisco has jurisdiction over this case.

## 2. Defendants

1.    **ACI GIFT CARDS, LLC , LLC :** Address 410 Terry Ave N, Seattle, WA 98109-

5210, Contact (800) 927-9800, Principal Officer Michael D. Deal

2.    **Amazon.com Inc.:** Address 410 Terry Ave N, Seattle, WA 98109-5210, Contact

(206) 266-1000, Principal Officer Andy Jassy (CEO)

15

1       3.       **Registered Agent:** Corporation Service Company, 300 Deschutes Way SW, Suite

2   208, Tumwater, WA 98501

3       4.       **Apple Inc.:** Address 1 Infinite Loop, Cupertino, CA 95014, Contact (408) 996-

4   1010, Principal Officer Tim Cook (CEO)

5       5.       **Registered Agent:** CT Corporation System, 28 Liberty St, New York, NY 10005

# III . Jurisdiction Statement

**Business Activities of Defendants:**

6.    **ACI GIFT CARDS, LLC. :** conducts business with California consumers by selling gift cards through the Amazon platform, directly related to this case. Therefore, California courts have jurisdiction over ACI GIFT CARDS, LLC .

7.    **Amazon.com, Inc.:** Amazon operates extensive business activities in California, including multiple fulfillment centers and warehouses, and delivers goods to California consumers through its logistics network. These activities grant California courts long-arm jurisdiction over Amazon.

8.    **Apple Inc.:** Apple is headquartered in Cupertino, California, and conducts its primary business operations in the state. The plaintiff's eviction incidents at the Apple Store in San Francisco further support California courts' jurisdiction over Apple Inc.

9.    **Legal Basis:** According to *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), if the defendant has "minimum contacts" within the jurisdiction and those contacts are

1    directly related to the lawsuit, the court has jurisdiction.

# IV . Litigation Background and Key Events

## 1. Background of the Case:

10.    On April 25, 2024, the plaintiff entered the United States with a B2 visa seeking

asylum due to political persecution in China. The plaintiff already suffered from anxiety before

the persecution, and the condition worsened after the persecution. Due to language barriers and

two theft incidents after arriving in the US, the plaintiff was forced to purchase ACI GIFT

CARDS, LLC   to buy essential goods on Amazon since only Chinese electronic payment

methods were available. However, Amazon repeatedly suspended the plaintiff's account and

canceled orders, severely affecting the plaintiff's survival. Additionally, the plaintiff faced

discriminatory treatment at the Apple Store in San Francisco, further exacerbating

psychological stress. These events directly led to the filing of this lawsuit, with the plaintiff

claiming that the defendants' actions violated contractual obligations and multiple laws,

seeking compensation for economic losses and emotional distress.

## 2. Key Events:

11.     June 26, 2024: The plaintiff's Amazon account was suspended due to "detection

of unusual payment activity" without specific explanations. Although the required documents

were submitted, the account was only temporarily restored.

12.     June 28, 2024: Two days after the initial restoration, Amazon again suspended the

account and canceled orders for essential items, including food, an iPhone 15 Max, and a

MacBook Pro 2019. This action severely threatened the plaintiff's survival needs and legal

residency, exacerbating mental health issues and initiating long-term medical treatment.

13.     July 20-29, 2024: The plaintiff, faced with language barriers and unfamiliarity

with transportation, registered a new account out of necessity. However, after using the gift

cards, Amazon suspended the account again without providing an appeal process, leading to

further deterioration of the plaintiff's condition.

14.     August 1, 2024: One day after the account was restored, it was suspended again.

Amazon determined that the two accounts were used by the same person by comparing

personal information, violating the plaintiff's privacy. The suspension prevented online

1    shopping, sacrificing the plaintiff's shopping convenience. The repeated suspensions and

2    inconveniences in daily life continuously worsened the plaintiff's mental state.

3        15.        July 27, 2024: The plaintiff was unjustifiably evicted from the Apple Store in San

4    Francisco while using in-store equipment, and the staff called the police. A few days later, on

5    July 31, 2024, the plaintiff was evicted again after clearly expressing the intention to make a

6    purchase, shattering the plaintiff's dignity and leading to suicidal thoughts.

# V．Statement of Facts

## 1. Entry into the United States:

16.      Initial Condition: Before entering the United States, the plaintiff already suffered

from severe anxiety, which worsened due to persecution in China because of their political

beliefs. On April 25, 2024, the plaintiff entered the United States with a B2 visa to seek asylum.

Due to the persecution, language barriers, and lack of a support network, the plaintiff's mental

condition continued to deteriorate in the United States.

## 2. Thefts:

**tanford University (May 21, 2024):**The plaintiff was theft in a conference room at the

prestigious Stanford University, losing all belongings except for a backpack and wallet. This

incident shocked the plaintiff and significantly impacted their sense of security.

**FedEx Store (June 24, 2024):**The plaintiff was theft again at a FedEx store across from the

USCIS building, losing all cash and bank cards, further eroding their trust in public safety in

the United States.

## 3. Identity Crisis:

17.    USCIS Issuance of NOID (June 25, 2024): The USCIS issued a Notice of Intent

to Deny (NOID) to the plaintiff, requiring a response within a limited time frame.

## 4. Health Deterioration:

18.    Due to the cumulative impact of the above events, the plaintiff frequently

experienced extreme psychological stress, including severe insomnia, anxiety, panic,

helplessness, isolation, depression, and frustration. The plaintiff's condition significantly

worsened. On June 17, 2024, under a doctor's recommendation, the plaintiff began taking the

sedative Trazodone in addition to existing anti-anxiety and sleep medications. After using the

sedative, the plaintiff could not think clearly, impairing their judgment and making it difficult

to understand or agree to the standard user agreement on the defendant's website. This also

serves as a key argument for the plaintiff's claim that the contract is invalid, as the plaintiff

lacked full capacity when agreeing to the terms.

## 5. Gift Card Purchase and Use:

23

1    19.    Due to the two theft incidents, the plaintiff could only use Alipay from China and

2    was forced to purchase ACI GIFT CARDS, LLC    worth $1,800 through Alibaba to buy

3    necessities (including food, an iPhone 15 Max, and a MacBook Pro 2019) on Amazon. The

4    plaintiff registered with the email msma529370228@gmail.com and was unaware of any third-

5    party purchase restrictions or related terms and conditions on the gift cards, as these were

6    neither disclosed nor required to be accepted during the registration and purchase process. For

7    the terms of use of Amazon.com Inc., the plaintiff was also unclear. It was only during the

8    subsequent rights protection process that the plaintiff realized Amazon Services used a

9    standardized contract, and that using the service implied acceptance of the terms.

10    ## 6. Account Suspensions and Bans

11    ## 6.1. First Suspension (June 26, 2024)

12    20.    **Vague Explanation：**    Amazon suspended the plaintiff's account, citing "unusual

13    payment activity," but did not specify the type of "unusual payment" or indicate which specific

14    orders were affected by the "unusual payment.

21.  **Plaintiff's Confusion:** Common types of unusual payment activities include, but

are not limited to, unusual payment frequency, multiple failed payment attempts, and unusual

geographic location. The defendant did not clarify which type of unusual payment was detected

or specify which orders were affected, making it difficult for the plaintiff to analyze and provide

evidence.

22.  **Evidence Submission as Requested：** The plaintiff then logged into the website,

and Amazon requested the upload of photos of the purchased gift cards. The plaintiff uploaded

the photos as requested.

23.  **Evidence Submission Limitations：** The defendant's evidence submission

interface limited the plaintiff to uploading a maximum of five images and 200 words, which

further complicated the plaintiff's already difficult analysis.

24.  **Limited Appeal Channels:** At the same time, no appeal channels were provided

for the dispute, depriving the plaintiff of their right to appeal.

25.  **Lack of Information Disclosure:** The defendant only explained the purpose but

did not disclose how the information would be processed, stored, or whether it would be shared

with third parties. This increased the plaintiff's anxiety.

**26.** **Temporary Restoration:** Although the reasons for the suspension were unclear,

the plaintiff submitted the requested photos of the gift cards as evidence, and the account was

temporarily restored. This brought the plaintiff some relief, thinking that the problem had been

resolved.

## 6.2. Second Suspension (June 28, 2024)

27. **Repeated Suspension:** On June 28, 2024, Amazon informed the plaintiff that the

previously submitted evidence was insufficient to lift the suspension, even though

the plaintiff had already provided photos of the purchased gift cards.

28. **Inconsistent Standards:** The plaintiff believes that Amazon's actions are

inconsistent because the documents submitted were sufficient to lift the suspension

the previous day, but the next day, they were told that the same documents were

insufficient to lift the suspension.

26

29. **Continuous Violations:** Similar to the first suspension, Amazon provided insufficient information regarding the unusual payment activity, such as failing to specify which order had unusual payment, not identifying the type of unusual payment, not providing an appeal channel, lacking immediate customer support, and limiting the upload of content to five images and 200 words. This violated the plaintiff's right to information and participation.

30. **Nominal Suspension but Actual Account Ban:** Although the account was nominally suspended, during the suspension and evidence submission periods, the plaintiff was restricted from logging in and could not access personal data, such as viewing and accessing past orders, delivery status, and billing information. The plaintiff believes that this was effectively a ban on the account, so the term "ban" will be used henceforth.

31. **Increased Personal Information Requirements:** During the second suspension, Amazon also requested the plaintiff to provide all personal details, including full

name, phone number, last four digits of the bank card, email, and address. This

violated the plaintiff's right to privacy.

32. **Resubmission:** Despite the violation of their rights, the plaintiff was forced to

upload all the requested information due to the unfamiliarity with the local area

and the need to shop online. Additionally, due to upload limitations, the plaintiff

had to upload shopping records from Alibaba, payment vouchers from Alipay, and

other gift card photos in multiple submissions.

33. **Refusal to Restore Account:** Despite complying with the requests, the defendant

still refused to restore the account, only replying that the provided information was

insufficient to lift the ban without specifying the reasons. This again deprived the

plaintiff of the right to know. Based on this lack of information, the plaintiff

believes that they were also deprived of the right to provide evidence.

34. **Comprehensive Explanation and Warning:** Due to the defendant's refusal to

restore the plaintiff's account, the plaintiff further explained their special

28

1    circumstances, including but not limited to being a tourist with language barriers

2    and explaining the reasons for being forced to purchase the gift cards due to theft,

3    pointing out Amazon's potential legal violations and procedural unfairness. Despite

4    multiple warnings, Amazon continued to ban the account.

5    35. **Cancellation of Essential Orders:** During the account ban, Amazon canceled

6    three critical orders:

7    36. Basic Food: Unable to meet basic survival needs through other means during the

8    account ban.

9    37. iPhone 15 Max:Used for daily communication, language translation, and recording

10   important information.

11   38. MacBook Pro 2019: An essential device for responding to the USCIS NOID,

12   learning English, and researching legal information.

13   39. **Loss and Psychological Impact:** The cancellation of these orders directly

14   threatened the plaintiff's survival needs and legal status, especially during the

1    critical period of responding to the USCIS NOID. This nearly deprived the plaintiff

2    of the right to legally reside and survive in the United States. The plaintiff's quality

3    of life declined, mental health deteriorated, and symptoms of anxiety and insomnia

4    worsened, leading to auditory hallucinations.

5    40. **Humanitarian Request:** After exhausting all other options, the plaintiff requested

6    Amazon to restore the orders on humanitarian grounds, but Amazon ignored this

7    request and continued to ban the account.

8    41. **Long-Term Treatment Begins:** These events led to a worsening of the plaintiff's

9    condition, resulting in multiple medical visits on July 2, July 5, July 15, July 27,

10    August 6, and August 19, 2024. This not only caused significant emotional distress

11    at the time but also necessitated ongoing psychological treatment in the future.

12    42. **Permanent Account Closure:** Ignoring all requests, Amazon officially closed the

13    account on July 12, 2024, completely cutting off the plaintiff's convenient access

14    to basic necessities.

43. **Lack of Customer Support System:** After the account was banned, the plaintiff made multiple attempts to contact Amazon customer support at (669) 329-7691 but was unable to obtain Chinese language support due to language barriers. This indicates a systemic issue in Amazon's lack of language support.

44. **Forced to Return Personal Computer:** Due to the theft incidents and the cancellation of three critical orders, the plaintiff was forced to return their personal computer by the deadline to obtain the cash needed for survival. Lacking a computer, the plaintiff had to use in-store equipment at Apple Stores and Hilton hotels to handle important matters, further increasing the risk of privacy exposure and psychological stress. Each time, the plaintiff felt deep shame for using computers meant only for customers, laying the groundwork for the subsequent two eviction incidents.

## 6.3. Third Suspension (July 20-29, 2024)

45. **Reluctant Re-registration:** Despite the frustration with the first two bans, the

1      plaintiff had to re-register a new account to continue shopping on Amazon due to

2      difficulties in adapting to offline shopping. Language barriers, unfamiliarity with

3      the local environment, and uncertainties in the offline shopping process left the

4      plaintiff with no other choice.

5      46. **Gift Card Re-purchase:** The plaintiff purchased gift cards through multiple

6      designated channels and found that even through designated channels, important

7      terms were still not disclosed, and there was no process for accepting the terms,

8      failing to protect the user's informed consent.

9      47. **Repeated Bans and Systemic Issues:** The plaintiff purchased new ACI GIFT

10     CARDS, LLC   through designated channels and registered a new account using

11     529370228@qq.com. After placing an order with the gift cards, Amazon again

12     banned the plaintiff's account, citing a third "unusual payment activity" detection.

13     This repeated ban, without providing any clear explanation or appeal process,

14     highlighted systemic issues in Amazon's risk control system.

48. **Firm Belief:** Since the purchase occurred in the United States and was made through designated channels, the plaintiff still believed that Amazon's actions were a misjudgment and that the account was restored after submitting the required evidence.

## 6.4. Fourth Suspension (August 1, 2024)

49. **Complete Breakdown:** However, the account was banned again just one day after restoration, with the reason still being insufficient evidence. This repeated ban pushed the plaintiff's disappointment and anger to the extreme. The plaintiff was forced to engage in offline shopping, which, due to unfamiliarity with transportation and language barriers, consumed a lot of time and effort, causing significant inconvenience.

50. **Luck and Misfortune:**This time, Amazon requested the plaintiff to upload the gift cards and receipts, including the last four digits of the bank card used. Fortunately,

1       the plaintiff had used a bank card for payment, but unfortunately, the receipts had

2       been discarded.

3   51. **Poor Receipt Reprinting:** To meet Amazon's requirements, the plaintiff had to go

4       to CVS to reprint the receipts but faced significant difficulties due to language

5       barriers, spending about an hour in the process, during which they were rudely

6       treated by store staff, further exacerbating the plaintiff's emotional distress.

7   52. **Invalid Evidence and Lack of Support:** Despite the plaintiff submitting photos

8       of the gift cards purchased through designated channels in the United States and

9       the reprinted receipts, Amazon still refused to lift the ban.

10  53. **The Significance of Reprinting Receipts:** This incident confirmed that if the

11      cards were purchased with cash and the receipts were not saved, the legitimacy of

12      the purchase could not be proven.

13  54. **Further Privacy Violations:** In a subsequent notification email, Amazon

14      identified that the two accounts were used by the same person by cross-referencing

34

1     the plaintiff's personal information.

2     55. **Suspicion of Amazon's Malicious Behavior:** After spending an hour reprinting

3     the receipts, along with the purchase through designated channels and uploading

4     the payment card number, Amazon still refused to restore the account, leading the

5     plaintiff to suspect that Amazon's banning actions might be malicious. This

6     completely destroyed the plaintiff's trust in Amazon and led to the decision to sue

7     Amazon to defend their rights.

8     56. **Consequences of Harm:** Building on the first account ban and order cancellations,

9     the second account ban further deteriorated the plaintiff's quality of life, leading to

10    a further decline in mental health, including persistent severe insomnia, tension,

11    and fear. The plaintiff subsequently developed suicidal thoughts.

12    # 7. Eviction Incidents

13    ## 7.1. Past Complaints

14    57.     **May 23, 2024:** after entering the United States, the Plaintiff filed a complaint with

Apple Inc. in the U.S. regarding unresolved issues with Apple China. Dayse Espindola, a

representative from Apple's Corporate Relations Department, conducted an internal

investigation and confirmed that there were issues in the service process in China. On May 23,

2024, Apple promised to provide the Plaintiff with a pair of AirPods Pro2 as compensation.

The Plaintiff accepted this compensation on July 28, 2024. However, as of August 20, 2024,

this compensation has not only not been fulfilled, but emails have also gone unanswered.

## 7.2. First Eviction (July 27, 2024)

7.2.1. **Background Description**

58.    On July 27, 2024, the Plaintiff entered the Apple Store at Union Square after the

Defendant Amazon canceled a computer order. During this time, although the Plaintiff

conducted themselves appropriately and treated others politely, Apple employees and security

forcibly evicted the Plaintiff from the store without providing a clear explanation.

### 7.2.2. Originating from Seeking Help

59.    The Plaintiff requested an explanation for the eviction. Through a translator, the

1    Plaintiff learned that Apple accused the Plaintiff of harassing its employees. On or about July

2    25 or 26, the Plaintiff had sought translation assistance from a Cantonese-speaking employee,

3    but the employee declined, citing work restrictions. The Plaintiff not only refrained from

4    blaming the staff member for the Defendant's violation of the ADA regulations, but also praised

5    the staff member for being very principled in their work.

6    **7.2.3. Defamation of the Plaintiff**

7        60.    More seriously, Apple not only failed to provide reasonable accommodations for

8    the Plaintiff's disability but also publicly claimed that the Plaintiff harassed its employees. This

9    statement was spread without any supporting evidence, constituting defamation by making

10   baseless accusations of harassment. When the Plaintiff asked if there was any evidence, Apple

11   did not provide any further explanation or evidence and continued to forcibly evict the Plaintiff.

12   **7.2.4. Forced Eviction**

13       61.    Since the Defendant did not provide detailed explanations or evidence, the

14   Plaintiff refused to leave. However, the Defendant called the police, escalating the situation.

37

**7.2.5. Public Dissemination**

62.    Through its employees, security personnel, and the involvement of the police,

Apple publicly spread this false statement, severely damaging the Plaintiff's reputation.

**7.2.6. Consequences of Harm**

63.    Plaintiff suffered severe psychological and emotional harm due to the

aforementioned false accusations, increasing feelings of isolation and helplessness, and

exacerbating anxiety and suicidal thoughts.

## 7.3. Second Eviction (July 31, 2024)

Due to Apple's refusal to provide translation and access to a computer, the Plaintiff, urgently

needing a computer to handle litigation and asylum materials, once again visited the Apple

Store at Union Square, attempting to purchase a computer. Despite repeatedly expressing the

intent to purchase a device, the Plaintiff was still forcibly evicted in public by the employees and

security, who again called the police, subjecting the Plaintiff to further public humiliation.

**7.3.1. Discriminatory Behavior**

64.    While other customers were allowed to purchase equipment, the plaintiff was

forcibly evicted without a clear reason or evidence, indicating discriminatory behavior by

1   Apple towards the plaintiff's health condition.

2   **7.3.2. Legal Definition:**

3   65.  Under the Americans with Disabilities Act (ADA), discriminatory behavior is

4        defined as unfair treatment based on an individual's protected characteristics (such

5        as disability, race, gender, etc.) in the provision of public services or goods. The

6        law requires service providers to offer reasonable accommodations and support to

7        ensure that individuals with disabilities can equally enjoy services and goods.

8        Failure to provide such accommodations or engaging in unfair differential

9        treatment based on a protected characteristic may constitute discrimination.

10  66.  Elements of Discrimination in This Case:

11  **Protected Characteristic:**

12  67. 2.  The Plaintiff suffers from severe anxiety, which is legally recognized as a

13        disability under the ADA. The Plaintiff's anxiety symptoms significantly affect

14        daily life, and therefore, Apple Inc. is obligated to provide reasonable

1    accommodations and support within a reasonable scope.

2    **Unfair Treatment:**

3    68.    Other customers were allowed to use computers, make purchases, and experience

4    the equipment in the Apple Store, while the Plaintiff, despite clearly expressing the

5    intent to purchase a device, was prohibited from using these facilities and forcibly

6    evicted. This differential treatment clearly indicates that Apple Inc. engaged in

7    unfair treatment based on the Plaintiff's health condition.

8    69.    The Plaintiff's behavior in the store did not violate any reasonable store policies,

9    nor was there any inappropriate conduct. Apple Inc. failed to provide any legitimate

10    reason or evidence to justify its decision to evict the Plaintiff. This unjustified

11    eviction further demonstrates Apple Inc.'s discriminatory behavior.

12    70.    The Plaintiff's health condition required reasonable accommodations and support,

13    but Apple Inc. failed to provide these accommodations, instead unjustifiably

14    evicting the Plaintiff from the store, constituting clear discriminatory behavior.

40

**Causal Connection:**

71. Apple Inc.'s differential treatment of the Plaintiff was directly due to the Plaintiff's health condition, rather than any violation of store policies or inappropriate conduct. The Plaintiff's anxiety symptoms may have manifested in behaviors different from those of typical customers, but these behaviors did not violate any reasonable store rules, and thus Apple Inc.'s actions lacked legitimate justification.

72. Apple Inc. employees failed to provide any reasonable explanation or evidence to support their decision to evict the Plaintiff, further proving the direct causal connection between the differential treatment and the Plaintiff's health condition.

**7.3.3. Fatal Blow**

73.    The consecutive public evictions and police involvement delivered a "fatal blow" to the Plaintiff's mental health and emotional state, shattering all dignity and self-respect.

**7.3.4. Long-term Impact**

74.    The cumulative effect of these two eviction incidents led to further deterioration

41

of the Plaintiff's mental health. The original sedatives no longer had any effect, and the Plaintiff

developed depression along with persistent anxiety, resulting in multiple sleepless nights. This

worsened the condition and necessitated the use of stronger sedatives.

## 8. Subsequent Events:

### 8.1. Forced Purchase of Membership Card (July 31, 2024)

75. **Background Description:** Due to Amazon's order cancellations and Apple's

evictions, the plaintiff no longer dared to use Hilton's computers. Faced with the urgent need

to prepare for litigation, study, and respond to USCIS, the plaintiff was forced to go to Costco

to purchase equipment. The plaintiff had to pay $60 for a membership card and spent $873 on

an Apple computer. This purchase was not the plaintiff's first choice but a decision made out

of necessity, increasing psychological stress and financial burden, highlighting the severe

impact of Amazon's and Apple's unfair actions on the plaintiff's life.

### 8.2. Health Deterioration (August 13, 2024)

76. **Worsening Condition:** As the plaintiff's condition continued to deteriorate and

the previous sedatives became ineffective, the plaintiff could not sleep. During a medical visit

on August 13, the doctor prescribed a stronger sedative, Quetiapine, at a dosage of 100mg.

After taking this medication, the plaintiff could barely sleep, but upon waking, experienced

grogginess, memory decline, logical confusion, and further deterioration in quality of life and

mental state.

## 8.3. Information Discovered During Subsequent Evidence Collection About

## Amazon

### 8.3.1. Amazon's False Advertising

77.    **Privacy and Data Security:** Amazon emphasizes that its products, services, and

systems are designed with privacy and security at their core and that it employs numerous

professionals to ensure the integrity and security of user data. However, the plaintiff found that

during the suspension, Amazon used cross-referencing of personal information to determine if

multiple accounts belonged to the same person. This action clearly violated the plaintiff's

privacy rights. The plaintiff felt that their privacy had been ruthlessly violated, making

1   Amazon's security promises meaningless, further increasing the plaintiff's anger and

2   disappointment.

### 8.3.2. FTC Lawsuit Against Amazon

4   78.   **Systemic Unfair Practices:** During the investigation of the above incidents, the

5   plaintiff discovered that the Federal Trade Commission (FTC) was suing Amazon, accusing it

6   of a series of illegal activities, including violations of Section 2 of the Sherman Act, Section 5

7   of the Federal Trade Commission Act (FTC Act), and various state competition and consumer

8   protection laws. The plaintiff realized that the injustices they experienced might be just the tip

9   of the iceberg of Amazon's broader illegal activities. The FTC's lawsuit strengthened the

10   plaintiff's determination to fight for their rights to prevent others from suffering the same fate.

### 8.3.3. Unfair and Unreasonable Discretion Granted by Amazon's Terms of Service

12   79.   **Excessive Discretion to Unilaterally Terminate Services and Cancel Orders:**

13   Amazon's user agreement grants itself extremely broad discretion, allowing it to unilaterally

14   terminate services, cancel orders, or restrict users from using its platform without any

1    reasonable notice or explanation. This discretion is overly broad, lacks necessary restrictions

2    and procedural safeguards, placing consumers in a highly disadvantageous position when

3    facing such decisions, severely undermining consumer rights.

4      80.    **a .Excessive Discretion to Unilaterally Terminate Services and Cancel Orders:**

5    Amazon's contract terms state: "Amazon.com Services LLC reserves the right to refuse service,

6    terminate accounts, terminate your rights to use Amazon.com Services LLC Services, remove

7    or edit content, or cancel orders in its sole discretion." This means Amazon can unilaterally

8    terminate services or cancel orders without any warning or reasonable explanation. These terms

9    give Amazon excessive power, allowing it to take actions detrimental to users without notifying

10   or explaining to them, seriously infringing on consumer rights.

11     81.    **b . Unfair Fees and Usage Restrictions:** Amazon's contract terms also include

12   hidden fees and unreasonable usage restrictions. For example, the contract terms use complex

13   legal jargon such as "non-exclusive, non-transferable, non-sublicensable license," which is

14   difficult for ordinary consumers to understand and is not prominently disclosed to consumers.

Case No. 06944    Document 1-2    30/08/2024 Page 46 of 180 PageID #:46

1    This complex contract design prevents ordinary consumers from fully understanding the

2    contract terms when signing, putting them at a disadvantage during the service usage process.

Case No.    30/08/2024    Page 47 of 180    Page ID #:47

# VI .  Causes of Action and Legal Violations

## 1. Legal Violations by ACI GIFT CARDS, LLC

82.    The plaintiff alleges that ACI GIFT CARDS, LLC ' actions violated Section 5 of

the Federal Trade Commission Act (FTCA), California Civil Code Section 1749.5(b), the

California Consumer Legal Remedies Act (CLRA) Section 1770, and the California Unfair

Competition Law (UCL) Section 17200.

### 1.1. Specific Violations:

#### 1.1.1.   Inadequate Information Disclosure:

83. ACI GIFT CARDS, LLC   displayed the link "See full terms: amazon.com/gc-

legal" in small font and inconspicuous locations on their gift cards, failing to

adequately inform consumers of their right to cash redemption when the balance is

below $10.

#### 1.1.2. Deceptive Business Practices:

84. ACI GIFT CARDS, LLC   concealed key terms in a way that misled consumers

47

about their rights when using the gift cards, constituting deceptive business

practices.

## 1.2. Supporting Case Law:

85.    **FTC v. Cyberspace.com, LLC, 453 F.3d 1196 (9th Cir. 2006):** The court found

that failing to clearly disclose essential terms and conditions violated the FTCA, constituting

unfair or deceptive business practices.

86.    **Shahinian v. Kimberly-Clark Corp., 2009 WL 1470429 (C.D. Cal. 2009):** The

court emphasized the importance of consumers' rights to be informed and to participate; failure

to clearly notify consumers of their rights violated California law.

87.    **Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.**

**4th 163 (1999):** The court explained the definition of unfair competition and confirmed that

concealing key information violated UCL regulations.

## 1.3. Impact on Plaintiff and Consumers:

**Impact on Consumers:**

88.     Due to ACI GIFT CARDS, LLC , Inc.'s actions, consumers using the gift cards

might suffer financial losses from not being fully aware of the terms, reducing the actual value

of the cards. This behavior infringed on consumers' right to be informed, placing them at a

disadvantage during the purchase and use of gift cards, thereby harming their legitimate rights.

**Impact on the Plaintiff:**

89.     Although ACI GIFT CARDS, LLC , Inc.'s actions did not directly cause the

plaintiff's economic losses, 99% of the plaintiff's payments were made using gift cards issued

by this company. In the account suspension actions, Amazon cited "abnormal payments" as the

reason for suspension. Given Amazon's repeated requests for the plaintiff to upload photos of

the gift cards, it is reasonable to infer that Amazon believed the plaintiff's gift cards were

problematic. Consequently, these gift cards became the trigger for all subsequent issues.

**Claim for Punitive Damages:**

90.     Given the aforementioned violations and the damages caused to the plaintiff, the

plaintiff claims punitive damages against Amazon and ACI GIFT CARDS, LLC , Inc. These

1    violations not only infringed upon consumers' legitimate rights but also caused the plaintiff

2    significant economic losses and emotional distress. Punitive damages are necessary to deter

3    such conduct in the future and to send a clear message that similar deceptive and unfair

4    practices will not be tolerated.

5    **Basis for Multiple Violations and Punitive Damages:**

6    91.    The plaintiff alleges that the actions of ACI GIFT CARDS, LLC , Inc. and

7    Amazon jointly constitute multiple violations, including inadequate information disclosure,

8    deceptive business practices, and unfair competition. According to **United States v.

9    Bestfoods, 524 U.S. 51 (1998)** and **FTC v. Cyberspace.com LLC (2006)**, when a parent

10   company has direct control or involvement in the unlawful actions of its subsidiary, the parent

11   company should be held jointly liable. Therefore, the plaintiff requests that the court hold

12   Amazon and ACI GIFT CARDS, LLC , Inc. fully liable for these violations and order them to

13   pay punitive damages to prevent similar conduct in the future and to protect consumers' rights.

# 2. Legal Violations by Amazon Services

## 2.1. Contract Invalidity

### 2.1.1. Contract Invalidity Due to Language Barrier

**Legal Basis:**

92. According to California Civil Code Section 1633.7, for a contract to be valid, both parties must clearly understand its terms. If one party cannot comprehend the contract due to a language barrier, the agreement may be deemed invalid or partially invalid due to the lack of informed consent.

**Case Law Support:**

93. In Specht v. Netscape Communications Corp. (2002), the court found that when contract terms are not clearly presented to a party, particularly in a language they understand, the contract may be deemed invalid. This applies when essential terms are hidden or not conspicuous, affecting the party's ability to give informed consent.

94. Furthermore, in Doe v. Internet Brands, Inc. (2016), the court expanded on this

1      principle by holding that online service providers have a duty to ensure that users

2      are fully informed of significant terms, especially those related to privacy and

3      security. The failure to clearly disclose such terms can lead to a contract being

4      unenforceable, underscoring the importance of transparency and user awareness in

5      contractual agreements.

6      **In this case:**

7   95. When signing the defendant Amazon's user agreement, I was unable to understand

8      the specific terms and conditions due to a language barrier. These terms pertained

9      to account management, order processing, and all significant interactions with

10     Amazon. However, the defendant did not provide any translation or explanation,

11     leading to a lack of informed consent when I signed the agreement. Under

12     California Civil Code and related case law, I argue that the contract is invalid or

13     certain clauses are void due to the absence of informed consent, which is a crucial

14     factor for contract validity.

1    **2.1.2. Impact of Mental State and Medication on Contract Validity**

2        **Legal Basis:**

3    96. Under California Civil Code Section 38, if a party is mentally incapacitated (due

4        to medication, severe anxiety, etc.) at the time of signing, the contract may be

5        considered void. This statute specifies that mental abnormalities or medication

6        influence may prevent the formation of a valid contractual intent.

7        **Case Law Support:**

8    97. Under California Civil Code Section 38, if a party is mentally incapacitated at the

9        time of signing the contract, it may be considered void. In Hagen v. Hagen (2002),

10        the court ruled that contracts entered into under impaired mental capacity can be

11        invalidated due to the lack of a clear contractual intent.

12        **In this case:**

13    98. At the time of signing the defendant Amazon's user agreement, my judgment and

14        comprehension were impaired due to severe anxiety and the effects of long-term

53

1    medication. Under these circumstances, I was unable to fully understand or agree

2    to the contract's content. According to California Civil Code Section 38 and

3    relevant case law, I argue that the contract is invalid because my mental state and

4    medication influence rendered me incapable of forming a valid contractual intent

5    when signing the agreement.

### 6   2.1.3. Unconscionability of Standard Form Contract

7    **Legal Basis:**

8    99. California Civil Code Section 1670.5 allows courts to invalidate or refuse to

9    enforce contracts, or specific terms within them, that are deemed unconscionable

10    at the time of signing. Unconscionability can arise from one-sided and oppressive

11    terms, especially in standard form contracts.

12    **Case Law Support:**

13    100. While Armendariz v. Foundation Health Psychcare Services Inc. (2000) discusses

14    the unenforceability of grossly unfair terms, Graham v. Scissor-Tail, Inc. (1981)

1    further reinforces that when a contract is presented in a take-it-or-leave-it manner,

2    without negotiation, and contains overly one-sided terms, the courts may find it

3    unconscionable and refuse enforcement..

4    **In this case:**

5    101. The defendant Amazon's user agreement is a typical standard form contract,

6    drafted unilaterally by the defendant, leaving me with no real opportunity for

7    negotiation. This one-sided standard form contract places the defendant in a

8    position of absolute advantage, especially in clauses related to account suspension

9    and order cancellation, granting the defendant unilateral power. According to

10   California Civil Code Section 1670.5 and relevant case law, I argue that these terms

11   are grossly unfair, and request the court to declare them void or unenforceable.

12   **2.1.4. Duress Due to Survival Pressure**

13   **Legal Basis:**

14   102. Under California Civil Code Section 1569, duress involves the use of unlawful

1    threats or compulsion that forces another party to enter into a contract without free

2    will.

3    **Case Law Support:**

4    103. In Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co. (1978), the

5    court recognized that contracts signed under economic duress, where one party

6    exploits the pressing need of the other, can be invalidated as they lack genuine

7    consent..

8    **In this case:**

9    104. When signing the defendant Amazon's user agreement, I was under extreme

10    survival pressure due to two theft incidents that left me without cash or credit cards,

11    plunging me into a desperate situation. I lacked sufficient funds to purchase food

12    or other basic necessities, and my only available payment method was Alipay from

13    my home country, which is not widely accepted in the United States. Facing such

14    survival pressure, I had no choice but to accept the defendant's user agreement and

1    related terms to obtain essential goods. This duress, caused by my survival needs,

2    deprived me of free will when signing the agreement. Under California Civil Code

3    Section 1569 and relevant case law, I argue that the contract is void because it was

4    signed under duress.

5    **2.1.5. Legal Basis and Support**

6    **Legal Basis:**

7    105.- California Civil Code Section 1670.5 further supports my argument. California

8    law permits courts to review and declare void those contract terms that are grossly

9    unfair at the time of signing.

10    106.- The California Consumer Legal Remedies Act (CLRA) and Unfair Competition

11    Law (UCL): These laws protect consumers from unfair business practices and

12    fraud. The defendant Amazon's user agreement and conduct may violate these laws,

13    particularly concerning the unfair terms in the standard form contract.

14    **Conclusion:**

1    107. Based on the factors above, the plaintiff requests that the court declare the contract

2        void.

## 2.2. Unjust Enrichment

### 2.2.1. Definition and Legal Basis:

5        108.    Unjust enrichment refers to a situation where one party gains economic benefits

6    without a legal basis, resulting in a loss to another party. California Civil Code Section 3274

7    stipulates that any benefits acquired without a legal basis should be returned by the benefiting

8    party.

### 2.2.2. Amazon's Unjust Enrichment:

**Acquisition of Economic Benefits**

11       109. During the suspension of the plaintiff's account, Amazon retained $1,800 paid by

12           the plaintiff, despite not providing the corresponding goods or services.

13       110. **Factual Description：** The plaintiff paid $1,800 for the purchase of goods, but due

14           to the account suspension, Amazon failed to fulfill its contractual obligations. This

1    payment constitutes unjust enrichment without a legal basis.

2    **Occurrence of Loss**

3    111. Due to the account suspension, the plaintiff was unable to obtain the goods they

4    paid for, and Amazon, without a legal basis, retained $1,800, directly causing the

5    plaintiff's financial loss.

6    **2.2.3. Case Law Support**

7    112. In \*Nelsen v. Nelsen\*, 59 Cal.App.4th 1042 (1997), the California Court of Appeal

8    confirmed that a party who benefits without a legal basis must return those benefits.

9    Amazon's actions are similar to this case, and therefore, it should return the unjust

10    enrichment.

11    **2.2.4. Conclusion and Request**

12    **Compensation for economic loss:**

13    113. Return the unjust enrichment of $1,800 to the plaintiff.

14    **Punitive damages:**

114. Although unjust enrichment does not typically lead to punitive damages, in this case, Amazon's unjust enrichment is closely related to its repeated arbitrary account suspensions, continued refusal to return funds, and disregard for the plaintiff's legal rights. These actions demonstrate Amazon's contempt for law and fairness, and the plaintiff requests punitive damages to deter similar behavior in the future.

## 2.3. False Advertising

### 2.3.1. Definition and Legal Basis：

115. False advertising refers to the act of making false or misleading statements in advertisements to attract consumers or influence their decisions. California Business and Professions Code Section 17500 explicitly prohibits making any false or misleading statements in advertising.

### 2.3.2. Amazon's False Advertising：

**False Statements Regarding Privacy Protection Commitments**

116. Amazon claims in its advertisements that the company's services and systems are designed with privacy and security at their core, committed to protecting user data privacy. However, in practice, Amazon violated users' privacy rights by cross-referencing personal information during the account suspension period. This behavior is a serious violation of the privacy commitments made in its advertisements, constituting false advertising.

**Factual Description:**

117. Amazon emphasizes its privacy protection measures in advertisements, but in practice, it processes and uses personal information without explicit user consent. This behavior contradicts its advertising commitments and is misleading.

**2.3.3. Case Law Support：**

118. In *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (2001), the court found that concealing key information and making misleading promises constitute fraudulent

behavior. Amazon's false promises regarding privacy protection are similar to the

situation in this case, constituting false advertising.

### 2.3.4. Request：

119.- Determine that Amazon's behavior constitutes a violation;

120.- Although false advertising does not typically lead to punitive damages, given

Amazon's multiple violations, the plaintiff requests punitive damages to deter

systemic illegal behavior.

## 2.4. Tort

### 2.4.1. Definition of Tort：

121. Tort refers to the act of one party infringing on the legal rights of another through

illegal or improper conduct, causing harm to the other party. According to

California Civil Code and related laws, torts mainly include the following aspects:

**Intentional Infliction of Emotional Distress:**

122. The perpetrator, through extreme or unreasonable behavior, intentionally inflicts

1         emotional distress on another person (California Civil Code Section 43).

2         **Negligence Leading to Economic Loss:**

3   123. The perpetrator fails to fulfill their duty of care, resulting in economic loss to

4         another party due to their negligent behavior (California Civil Code Section 1714).

5         **Invasion of Privacy:**

6   124. Illegally collecting, using, or disclosing another person's private information

7         without their consent, thereby infringing on their privacy rights (California Civil

8         Code and the California Consumer Privacy Act (CCPA) and California Privacy

9         Rights Act (CPRA)).

10       **Malicious Conduct or Intentional Harm:**

11   125. The perpetrator intentionally causes economic or emotional harm to another person

12        through malicious or unreasonable conduct (California Civil Code Section 3294).

13  **2.4.2. Analysis of Amazon's Tortious Behavior**

**Intentional Infliction of Emotional Distress**

**Tortious Conduct：**

126. Amazon repeatedly suspended the plaintiff's account without cause and canceled

orders for essential living items when the plaintiff was in severe economic and

psychological distress. This behavior not only disregards the plaintiff's plight but

also exacerbates the plaintiff's psychological stress and emotional distress through

repeated rejections and suspensions.

**Description of Harm:**

127. Due to Amazon's actions, the plaintiff's emotional and psychological state has been

severely negatively affected, leading to anxiety, insomnia, and emotional distress.

**Legal Basis：**

128. According to California Civil Code Section 43, intentional infliction of emotional

distress involves intentional conduct, extreme or unreasonable behavior, causation,

and severe emotional distress.

**Case Law Support:**

129. In \*Christensen v. Superior Court\*, 54 Cal.3d 868 (1991), the California Supreme Court confirmed the essential elements of intentional infliction of emotional distress. Amazon's behavior shows similar extremity and unreasonableness, directly leading to the plaintiff's emotional harm, meeting the requirements for intentional infliction of emotional distress.

**Negligence Leading to Economic Loss**

**Tortious Conduct:**

130. The defendant exhibited serious negligence in managing the plaintiff's account, failing to properly handle the evidence submitted by the plaintiff, erroneously suspending the plaintiff's account, and preventing the plaintiff from accessing essential living supplies and equipment, resulting in economic loss.

**Description of Harm：**

131. Due to Amazon's negligent behavior, the plaintiff was unable to purchase necessary

65

1    living supplies in time, leading to a significant decline in their quality of life and

2    causing actual economic loss.

3    **Legal Basis:**

4    132. According to California Civil Code Section 1714, negligence involves a duty of

5        care, breach of duty, causation, and actual harm.

6    **Case Law Support:**

7    133. In *Rowland v. Christian*, 69 Cal.2d 108 (1968), the California Supreme Court

8        established the elements of negligence tort, particularly emphasizing the duty of

9        care owed by the defendant. Amazon's failure to fulfill its duty of care in managing

10        the account and handling evidence led to the plaintiff's economic loss, constituting

11        negligence.

12    **Invasion of Privacy**

13    **Tortious Conduct:**

14    134. The defendant processed the plaintiff's personal data without proper consent and

1    used this data in decisions regarding account suspension. Additionally, the

2    defendant may have cross-referenced the plaintiff's information with other

3    accounts without consent, thereby infringing on the plaintiff's privacy rights.

4    **Description of Harm:**

5    135. Amazon's invasion of privacy not only caused psychological distress to the

6    plaintiff but also threatened the security of the plaintiff's personal information.

7    **Legal Basis:**

8    136. California Consumer Privacy Act (CCPA) and California Privacy Rights Act

9    (CPRA): These laws require companies to obtain proper consent when processing

10    consumer personal information and to inform them of the purpose of information

11    use.

12    137.  Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510-2523: This

13    federal law makes it illegal to intercept or monitor electronic communications

14    without authorization.

**Case Law Support：**

138. In *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th 1 (1994), the California

Supreme Court established the standard for the reasonable expectation of privacy.

Amazon's processing of the plaintiff's personal data without proper consent

directly infringes on the plaintiff's privacy rights, meeting the elements of an

invasion of privacy.

**Malicious Conduct or Intentional Harm：**

**Tortious Conduct:**

139. The defendant repeatedly suspended the plaintiff's account and canceled the

plaintiff's orders without justification, particularly when the plaintiff relied on

these orders for basic living necessities, demonstrating clear malice and unfair

conduct.

**Description of Harm:**

140. Amazon's malicious behavior prevented the plaintiff from obtaining essential

1   living supplies, further exacerbating economic and emotional harm.

2   **Legal Basis:**

3   141. According to California Civil Code Section 3294, intentional harm may result in

4   punitive damages, especially when the conduct involves malice.

5   **Case Law Support:**

6   142. In *Taylor v. Superior Court*, 24 Cal.3d 890 (1979), the California Supreme Court

7   discussed the standards for punitive damages, particularly for malicious or

8   intentional harm. Amazon's repeated malicious behavior, especially in neglecting

9   the plaintiff's basic living needs, shows clear malice, constituting intentional harm

10   and warranting punitive damages.

11   **2.4.3. Argument for Systemic Tortious Conduct：**

12   **Definition and Manifestation of Systemic Tortious Conduct：**

13   143. Systemic tortious conduct refers to the repeated use of similar tortious methods in

14   multiple interactions with a single victim, resulting in harm in each interaction. In

1    Amazon's conduct, the plaintiff experienced multiple account suspensions and

2    order cancellations, each accompanied by vague explanations and information

3    concealment, leading to repeated harm and damage to the plaintiff throughout the

4    process.

5    **Case Law Support：**

6    144. In *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999), although

7    this is a ruling from the Seventh Circuit Court of Appeals, the concept of systemic

8    tortious conduct mentioned in the case can be analogously

9    145.  applied to this case. Amazon's repeated and opaque operations caused harm to the

10    plaintiff in each interaction, consistent with the concept of systemic tortious

11    conduct in *Speakers of Sport*.

12    **2.4.4. Conclusion and Compensation Request：**

13    146. Based on the above analysis, the plaintiff asserts that the defendant Amazon's

14    actions constitute systemic tortious conduct and therefore requests the following

70

compensation:

**Compensation for Economic Loss:**

147. To compensate for the direct economic loss caused by the systemic tortious conduct.

**Compensation for Emotional Distress:**

148.  To compensate for the mental anguish caused by the systemic tortious conduct.

**Compensation for Privacy Infringement:**

149. To compensate for the psychological and emotional damage caused by the invasion

of privacy.

**Punitive Damages:**

150. Due to the malicious and systemic nature of the defendant's conduct, punitive

damages should be awarded to deter similar behavior in the future.

## 2.5. Repeated Fraudulent Conduct

### 2.5.1. Definition of Fraud：

151. Fraudulent conduct refers to the act of intentionally making false statements,

1 concealing important facts, or misleading others to cause them to rely on such false

2 information, ultimately leading to their loss. The main elements of fraud include:

3 **False Statements or Concealment of Facts** (California Civil Code Section

4 **1709):**

5 152. The perpetrator provides false information or intentionally conceals important facts.

6 **Intent of the Perpetrator:**

7 153. The perpetrator intentionally makes these false statements or concealments to

8 mislead or deceive others.

9 **Reasonable Reliance by the Victim:**

10 The victim reasonably relies on these false statements or concealed facts.

11 **Damage：**

12 154. The victim suffers actual harm as a result of relying on these false statements.

13 **2.5.2. Analysis of Amazon's Fraudulent Conduct：**

1   **False Statements and Concealment of Facts：**

2          **Fraudulent Conduct:**

3   155. Amazon made false statements and concealed key facts in handling the plaintiff's

4          account suspension and order cancellations. Specifically:

5          **False Statements:**

6   156. Amazon claimed that the plaintiff's account was suspended due to "suspicious

7          payment activities," but failed to provide specific details or explanations, leaving

8          the plaintiff unable to understand the actual nature of the problem.

9          **Concealment of Facts:**

10  157. Amazon did not disclose the specific standards for its internal account review and

11         monitoring of suspicious payments or the specific information used when

12         suspending accounts. This concealment left the plaintiff at a disadvantage in

13         protecting their rights.

14         **Legal Basis:**

158. According to California Civil Code Section 1572 and the Federal Trade Commission Act (FTCA, 15 U.S.C. § 45), false statements or concealment of important facts constitute consumer fraud. The FTCA explicitly prohibits unfair or deceptive acts aimed at protecting consumers from fraudulent statements and improper business practices.

**Case Law Support:**

159. In *Lazar v. Superior Court*, 12 Cal.4th 631 (1996), the California Supreme Court confirmed the elements of fraud, emphasizing the key role of intentional concealment of facts and misleading behavior in fraud cases. Additionally, the FTCA further strengthens consumer protection at the federal level, especially in cases involving interstate commerce.

**Intent of the Perpetrator:**

**Fraudulent Conduct:**

160. Amazon showed a clear intent to mislead or deceive in handling the account

74

1    suspension and order cancellations. Even after the plaintiff submitted all required

2    evidence, Amazon still refused to restore the account without providing a

3    reasonable explanation. This suggests that Amazon may have intentionally used

4    vague or misleading information to prevent the plaintiff from effectively defending

5    their rights.

6    **Legal Basis:**

7    161. According to California Civil Code Section 1709, fraud requires proof of intent to

8    deceive or mislead. At the same time, the Federal Trade Commission Act also

9    explicitly prohibits behavior that intentionally misleads consumers.

10   **Case Law Support:**

11   162. In *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004), the

12   California Supreme Court discussed the intent element in fraud cases, noting that

13   the perpetrator's intent to deceive is a critical factor in determining fraud. The

14   FTCA further states that any intentional deceptive behavior is illegal and may lead

1        to federal legal consequences.

2    **Reasonable Reliance by the Victim**

3        **Fraudulent Conduct:**

4    163. After receiving Amazon's notice of account suspension and order cancellation, the

5        plaintiff reasonably relied on the information provided by Amazon and attempted

6        to resolve the issue by submitting the required documents and evidence. However,

7        due to Amazon's intentional provision of false or incomplete information, the

8        plaintiff's reasonable reliance was exploited, resulting in further losses.

9        **Legal Basis:**

10    164. According to California Civil Code Section 1710, the victim's reasonable reliance

11        on fraudulent statements means that the victim reasonably believes and relies on

12        the perpetrator's statements in making decisions. At the same time, the FTCA's

13        provisions further protect consumers' reliance interests in commercial transactions,

14        prohibiting businesses from exploiting consumers' trust through fraud.

**Case Law Support:**

165.  In *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951 (1997), the California Supreme Court emphasized the importance of the victim's reasonable reliance on fraudulent statements, considering this reliance a key factor in fraud cases. The FTCA provides a broader legal framework to ensure that consumer trust is not abused.

**Damage：**

**Fraudulent Conduct：**

166.  Due to Amazon's false statements and concealment of facts, the plaintiff was unable to promptly resolve the account suspension issue, leading to the cancellation of essential living supplies orders. This caused not only economic losses but also severe emotional distress and mental health issues. The plaintiff's quality of life significantly declined, requiring long-term psychological treatment.

**Legal Basis:**

167. According to California Civil Code Section 1709, damages from fraud include

economic losses and other actual harm resulting from reliance on false statements.

Additionally, the FTCA stipulates that consumers who suffer losses due to unfair

or deceptive acts may seek federal-level penalties and compensation.

**Case Law Support:**

168. In *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226 (1995), the California

Supreme Court stated that victims of fraud have the right to seek compensation for

all damages resulting from reliance on false statements. The FTCA's relevant

provisions further emphasize the protection of consumers from harm, particularly

in cases of large-scale or systemic fraud.

**2.5.3. Argument for Systemic Fraudulent Conduct：**

169. Through the analysis above, it is clear that Amazon's actions constitute fraud.

Specifically, Amazon intentionally provided false information and concealed

important facts in handling the account suspension and order cancellations,

78

1   misleading the plaintiff into making incorrect decisions, ultimately leading to

2   economic and emotional losses.

3   **Multiple Fraudulent Acts:**

4   170. Amazon's fraudulent conduct is not limited to a single event but is systemic and

5   multi-layered, permeating the entire account management and order processing

6   process.

7   **Severity:**

8   171. Amazon's actions not only caused direct harm to the plaintiff but also reflect a

9   systemic disregard for consumer rights in its business operations. The severity of

10  this fraudulent conduct entitles the plaintiff to seek substantial compensation and

11  other legal remedies.

12  **Federal-Level Implications:**

13  172. Since Amazon's actions involve multiple states and possibly international

14  transactions, they also violate the Federal Trade Commission Act. The FTCA

1    grants the federal government the authority to investigate and penalize large-scale

2    fraudulent conduct.

3    **2.5.4. Conclusion and Compensation Request**

4    173. Based on the above analysis, the plaintiff contends that Amazon's actions constitute

5    fraud and therefore seeks compensation. This compensation should include:

6    **Compensation for Economic Loss:**

7    174.  To compensate for the direct economic losses caused by false statements and

8    concealment of facts.

9    **Compensation for Emotional Distress:**

10    175. To compensate for the mental anguish and psychological health issues resulting

11    from the fraudulent conduct.

12    **Punitive Damages:**

13    176. Given the intentional deceptive nature of Amazon's actions and its violation of the

14    Federal Trade Commission Act, punitive damages should be awarded to deter

1        similar conduct.

## 2. 2.6. Violation of Consumer Protection Laws:

### 3. 2.6.1. Definition of Consumer Protection Laws:

4        177. Consumer protection laws are designed to protect consumers from fraud, deception,

5        and unfair business practices in the purchase of goods or services. According to the

6        California Consumers Legal Remedies Act (CLRA, California Civil Code Sections

7        1750-1784) and the California Unfair Competition Law (UCL, California Business

8        and Professions Code Sections 17200-17210), consumer protection laws primarily

9        cover the following aspects:

10        **False Statements and Concealment of Information:**

11        178. Businesses may not make false or misleading statements or conceal important facts

12        related to transactions (California Civil Code Section 1770(a)(5) and (a)(7)).

13        **Fair Trade and Right to Redress:**

14        179. Consumers have the right to fair trade, and businesses may not deprive consumers

1    of their right to redress or other legal rights through unreasonable or malicious

2    conduct (California Business and Professions Code Section 17200).

3        **Reasonable Business Practices:**

4    180. Businesses must handle consumer affairs reasonably and fairly, and may not

5        engage in malicious operations or unreasonable business practices to gain improper

6        benefits (California Civil Code Section 1770(a)(14), California Business and

7        Professions Code Section 17200).

8    **2.6.2. Analysis of Amazon's Violation of Consumer Protection Laws：**

9    **False Statements and Concealment of Information：**

10        **Applicability of Definition:**

11    181. False statements and concealment of information refer to a business intentionally

12        providing misleading information or intentionally concealing important facts that

13        may affect consumer decisions. This conduct violates consumers' rights to access

14        truthful information and directly impacts their decision-making abilities.

**Description of Conduct:**

182. Amazon, when notifying the plaintiff of the account suspension, failed to specify which transaction or gift card had issues or to clearly explain why these transactions or gift cards were deemed suspicious. Amazon's lack of transparency left the plaintiff unable to understand the specific reasons for the account suspension and unable to take effective measures to lift the suspension.

**Description of Harm:**

183. Due to Amazon's concealment of important information and lack of transparent statements, the plaintiff could not take timely action to lift the account suspension, resulting in the cancellation of important orders. These orders included purchases of essential living supplies, directly affecting the plaintiff's daily life and survival. Amazon's conduct not only violated the disclosure requirements under consumer protection laws but also caused the plaintiff economic losses and emotional distress.

**Analysis of Legal Violation：**

184. According to California Civil Code Section 1770(a)(5) and (a)(7), false statements or concealment of important facts constitute consumer fraud. Amazon's conduct in this case clearly violates the CLRA's provisions, as it concealed information crucial to the consumer's decision-making, directly depriving the plaintiff of their right to make informed decisions.

**Case Law Support:**

185. In *Kasky v. Nike, Inc.*, 27 Cal.4th 939 (2002), the California Supreme Court emphasized that any false or misleading statements in commercial transactions could constitute consumer fraud. Amazon's failure to disclose important information related to the account suspension directly led to the plaintiff's harm, fitting the definition of fraud in the *Kasky* case.

**Deprivation of Right to Redress and Consumer Rights**

**Applicability of Definition：**

186. Fair trade and the right to redress refer to the basic rights consumers should enjoy

1    during transactions, including the right to seek redress and reasonable resolution in

2    case of disputes. Businesses may not deprive consumers of these basic rights

3    through unfair means.

4    **Description of Conduct:**

5    187. During the suspension of the plaintiff's account, Amazon provided no redress

6    channels or customer support. This conduct deprived the plaintiff of basic

7    consumer rights, leaving them unable to take any action to protect their rights after

8    the account was suspended.

9    **Description of Harm:**

10    188. Due to Amazon's deprivation of the plaintiff's right to redress, the plaintiff was

11    unable to obtain any support or help after the account suspension, preventing the

12    plaintiff from purchasing essential living supplies, further exacerbating their

13    economic difficulties. Amazon's conduct not only violates consumer protection

14    laws but also directly caused the plaintiff's economic and emotional harm.

1    **Analysis of Legal Violation:**

2    189. According to California Business and Professions Code Section 17200, unfair or

3    unreasonable business practices, particularly those that deprive consumers of their

4    right to redress, constitute consumer infringement. By depriving the plaintiff of the

5    right to redress, Amazon directly caused harm to the plaintiff, fitting the definition

6    of unfair business practices under the UCL.

7    **Case Law Support:**

8    190. In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20

9    Cal.4th 163 (1999), the California Supreme Court established the standard for

10   unfair business practices, emphasizing that any conduct depriving consumers of

11   basic rights may constitute a violation of the unfair competition law. Amazon's

12   conduct in depriving the plaintiff of the right to redress directly caused harm to the

13   plaintiff, fitting the definition of unfair business practices under the unfair

14   competition law.

1    **Unreasonable Business Practices and Malicious Operations：**

2          **Applicability of Definition：**

3    191. Reasonable business practices require businesses to handle consumer affairs fairly

4          and reasonably. Malicious operations or unreasonable business practices refer to a

5          business intentionally taking unfair or malicious actions to gain improper benefits

6          or harm consumer rights.

7          **Description of Conduct:**

8    192. Despite the plaintiff repeatedly providing all the necessary documents and proof

9          requested by the defendant, Amazon failed to reasonably process these documents

10         and continued to suspend the plaintiff's account. This unreasonable business

11         conduct not only directly prevented the plaintiff from obtaining essential living

12         supplies but also increased the plaintiff's economic and psychological stress.

13         **Description of Harm:**

14   193.  Amazon's continued suspension of the account, especially when the plaintiff had

1    made every effort to provide all the necessary information, caused significant harm

2    to the plaintiff's life. The plaintiff was unable to complete necessary purchases,

3    further exacerbating economic difficulties and psychological stress. These

4    damages are directly caused by Amazon's unreasonable business conduct and

5    malicious operations.

6    **Analysis of Legal Violation:**

7    194. According to California Civil Code Section 1770(a)(14) and California Business

8    and Professions Code Section 17200, unreasonable business conduct and malicious

9    operations violate the basic principles of fair trade, constituting consumer rights

10   violations. Amazon's unreasonable business conduct and malicious operations not

11   only violate the UCL's provisions but also breach the CLRA's requirements for fair

12   trade and reasonable handling of consumer affairs.

13   **Case Law Support:**

14   195. In *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal.App.4th

1    861 (1999), the California Court of Appeal determined that unreasonable business

2    conduct and malicious operations against consumers constitute violations of the

3    unfair competition law. Amazon's conduct in this case, particularly the refusal to

4    lift the account suspension and the disregard for the plaintiff's reasonable requests,

5    is similar to the unreasonable business conduct in the *South Bay Chevrolet* case,

6    directly causing harm to the plaintiff and constituting a serious violation of

7    consumer rights.

8    **Conclusion and Compensation Request：**

9    196. Based on the above analysis, the plaintiff asserts that the defendant Amazon's

10    conduct violates consumer protection laws, specifically through false statements,

11    concealment of information, deprivation of the right to redress, and unreasonable

12    business practices. These actions directly caused the plaintiff's economic losses

13    and emotional distress, and the plaintiff therefore seeks the following

14    compensation:

**Compensation for Economic Loss:**

197. To compensate for the actual economic losses directly caused by Amazon's illegal conduct.

**Compensation for Emotional Distress:**

198. To compensate for the mental anguish caused by Amazon's unreasonable and malicious conduct.

**Punitive Damages:**

199. Given the malicious nature of the defendant's conduct, punitive damages should be awarded to deter similar unfair business practices in the future.

## 2.7. Deprivation of Basic Survival Rights and Violation of Humanitarian Principles

### 2.7.1. Overview:

1    200.    The plaintiff accuses Amazon of not only violating contract law but also severely

2    infringing upon their basic survival rights and humanitarian principles. Despite being fully

3    aware of the plaintiff's severe psychological and economic hardships, Amazon still chose to

4    cancel and refuse to restore essential food orders. This action not only deprived the plaintiff of

5    access to basic necessities but also exacerbated their mental distress, leading to a significant

6    deterioration in their health. The plaintiff argues that Amazon's actions are tantamount to

7    depriving them of their basic survival rights, thus constituting a grave violation of fundamental

8    human rights as protected by the U.S. Constitution and international human rights law, and a

9    blatant disregard for humanitarian principles.

10    **2.7.2. Legal Basis:**

11    201.    Under the U.S. Constitution and international human rights law, the right to basic

12    survival is considered a fundamental human right. Any action that prevents an individual from

13    meeting their basic life needs can be viewed as a violation of basic human rights.

14    **2.7.3. Defendant's Actions:**

202.    1**. Cancellation and Refusal to Reinstate Food Orders:** On June 28, 2024, during the suspension of the plaintiff's account, Amazon canceled the plaintiff's food order. This was done despite the plaintiff informing Amazon of their dire situation in the U.S., including being a victim of theft, coerced purchases, lack of a support network, language barriers, and total reliance on the purchased food for survival. Amazon still refused to reinstate the order. Although this action did not directly revoke the right to survival, it was equivalent to such a deprivation, constituting a violation of basic survival rights.

203.    **2. Ignoring Special Circumstances and Humanitarian Requests:** As mentioned above, after Amazon was informed of these critical details, the plaintiff applied for humanitarian assistance, yet Amazon still refused to reinstate the order. This action violated basic humanitarian principles.

**2.7.4. Specific Damages:**

204.    Due to Amazon's actions, the plaintiff's basic survival rights were severely threatened, leading to the following damages:

205. **Survival Stress:** The cancellation of the food order meant that the plaintiff's basic life needs were not met, causing immense survival stress. This stress includes not only fear of meeting basic life-sustaining needs but also extreme anxiety and despair about future survival, resulting in significant psychological and physiological impacts on the plaintiff.

206. **Worsening Mental Health:** The inability to obtain basic life necessities further deteriorated the plaintiff's mental health, leading to suicidal tendencies.

**2.7.5. Causation Between Violations and Damages:**

207. Amazon's actions directly led to threats against the plaintiff's survival and caused severe mental harm. After learning about the plaintiff's special circumstances and humanitarian requests, Amazon still chose to cancel their order for essential life necessities and ignored the humanitarian plea. This behavior directly caused a serious threat to the plaintiff's survival and severe psychological distress.

**2.7.6. Supporting Case Law:**

208. **Goldberg v. Kelly, 397 U.S. 254 (1970):** The Supreme Court held that depriving

1   individuals of basic living conditions (such as welfare benefits) requires the protection of due

2   process. Although this case primarily involves government actions, the principle of procedural

3   justice can also guide commercial conduct. Amazon's cancellation of the plaintiff's order for

4   basic life necessities without providing reasonable procedural protections constituted a

5   violation of the plaintiff's basic survival rights.

6       209.    **Olmstead v. L.C., 527 U.S. 581, 598 (1999):** The court emphasized that public

7   service providers must not engage in discriminatory treatment based on disability or health

8   conditions and should provide necessary reasonable accommodations. In this case, Amazon

9   ignored the plaintiff's special needs and deprived them of the right to obtain basic life

10  necessities, constituting a violation of basic survival rights

11  **2.8. Monopolizing the Market in Violation of the Sherman Act (15 U.S.C. §**

12  **2)**

13  **2.8.1. Legal Basis:**

14      210.    **Section 2 of the Sherman Act:** Prohibits any enterprise from monopolizing,

1    attempting to monopolize, or maintaining its market dominance through unreasonable

2    restraints, which constitutes illegal behavior.

3    **2.8.2. Supporting Case Law:**

4    211.    **United States v. Grinnell Corp., 384 U.S. 563 (1966):** The court found that an

5    enterprise that dominates a relevant market and maintains that dominance by excluding

6    competition or controlling the market engages in abusive market dominance.

7    212.    **Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985):** The

8    court held that a company that restricts competitors or harms consumers through unreasonable

9    market behavior is abusing its market dominance.

10    213.    **Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992):**

11    The court ruled that enterprises must not harm consumer rights or exclude competitors through

12    unfair market practices.

13    **2.8.3. Violations:**

14    214.    1. Account Suspensions and Order Cancellations:

215.    From June 26 to August 1, 2024, Amazon repeatedly suspended the plaintiff's

account and canceled orders for essential living necessities without just cause. These actions

not only directly impacted the plaintiff's right to survival but also imposed unreasonable market

pressure on consumers by controlling user accounts and orders.

216.    These account suspensions were not isolated incidents but part of Amazon's use

of its market power to impose unreasonable restrictions. Even after the plaintiff submitted all

required proof materials, Amazon still refused to lift the account suspension, demonstrating a

disregard for market transparency and consumer rights. This behavior weakened consumers'

bargaining power and placed them in a market environment entirely controlled by Amazon.

**2. Exclusionary Strategies:**

217.    **Anti-Discount Policy:** Amazon penalizes sellers who offer lower prices on other

platforms by excluding them from the "Buy Box," a key sales channel on its platform. This

strategy effectively weakens market competition and forces sellers to conform to Amazon's

pricing policies, stifling competition on other platforms.

218.    **Mandatory Fulfillment Services:** Amazon requires third-party sellers to use its

fulfillment services (FBA) to qualify for Prime status, which is crucial for reaching a broad

customer base. This behavior ties sellers to Amazon's ecosystem and raises barriers to market

entry for competitors, further exacerbating market imbalance and making it difficult for small

sellers to compete in a fair market environment.

**3. FTC Allegations:**

219.    **Anti-Competitive Behavior:** According to allegations by the Federal Trade

Commission (FTC), Amazon has used a series of unfair business practices and market

manipulation to further consolidate its market dominance. The FTC accuses Amazon of using

its market advantage to engage in various unfair competition practices, including manipulating

sellers, restricting competition, and enhancing its monopoly power through complex market

strategies.

220.    **Market Impact:** The FTC points out that Amazon's actions not only pose a

serious threat to competitors but also lead to higher prices and fewer choices for consumers.

1    These allegations align with those in this case, further indicating that Amazon's actions have

2    exceeded the bounds of legal competition.

3    **2.8.4. Specific Damages:**

4    **1. Economic Damages:**

5    221.    The plaintiff was unable to obtain basic living necessities due to account

6    suspensions and order cancellations, leading to actual economic losses. These losses are not

7    limited to material damage but also include indirect economic losses from the inability to carry

8    out daily life activities normally.

9    222.    The plaintiff was forced to accept Amazon's unreasonable market conditions,

10    paying higher prices or being compelled to use other inconvenient services. This economic loss

11    is directly attributable to Amazon's abusive behavior, adding extra financial pressure on the

12    plaintiff.

13    **2. Emotional Damages:**

14    223.    The inconvenience and stress caused by account suspensions and order

cancellations resulted in severe emotional distress for the plaintiff. This distress not only

affected the plaintiff's daily life but also worsened anxiety, insomnia, and other mental health

issues.

224.    After experiencing multiple account suspensions and order cancellations, the

plaintiff felt helpless and powerless in defending their rights, further intensifying emotional

stress and having a lasting negative impact on their mental health.

**2.8.5. Causation Between Violations and Damages:**

**1. Causal Chain:**

225.    Amazon, through its market dominance, engaged in a series of exclusionary and

anti-competitive behaviors, directly causing the plaintiff's economic and emotional damages.

These actions restricted the plaintiff's access to essential living supplies, forcing them to pay

higher costs and endure significant emotional stress.

226.    The plaintiff's damages are a direct result of Amazon's abuse of market dominance.

Amazon's unfair account suspensions and order cancellations led to the plaintiff's economic

1    losses and emotional distress, all of which can be directly traced back to Amazon's abusive

2    behavior.

3    **2. Market Impact:**

4    227.    Amazon's actions not only harmed the plaintiff but also disrupted the competitive

5    environment of the market. By abusing its market dominance, Amazon caused market prices

6    to rise, reduced consumer choices, and made it difficult for competitors to enter the market.

7    These actions not only damaged consumer interests but also undermined the overall fairness of

8    the market.

9    **2.8.6. Supporting Case Law:**

10    228.    **1. United States v. Grinnell Corp., 384 U.S. 563 (1966):** Supports the plaintiff's

11    allegation that Amazon excluded competition through its market dominance. Amazon's

12    behavior is similar to the actions in Grinnell, where the company used market power to exclude

13    competitors and maintain a monopoly.

14    229.    2**. Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585 (1985):**

1    Supports the plaintiff's allegation that Amazon's actions harmed market competition and

2    consumer rights. Amazon's repeated account suspensions and order cancellations achieved the

3    same goal of limiting consumer choice to maintain market dominance.

4    230.    3. **Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992):**

5    Supports the plaintiff's allegation that Amazon's abuse of market dominance led to consumer

6    harm. The Kodak case established that companies should not harm consumer rights through

7    unfair market practices, and Amazon's actions similarly disrupted market competition.

8    **2.8.7. Systemic Violation of Consumer Rights:**

9    **1. Systemic Nature of Abusive Behavior:**

10    231.    From June 26 to August 1, 2024, Amazon demanded personal information during

11    account suspensions but failed to provide clear appeal channels or transparent explanations.

12    This lack of transparency not only limited the plaintiff's ability to defend their rights but also

13    decreased consumer trust in Amazon.

14    232.    These actions were not limited to individual consumers but reflected Amazon's

1    use of its dominant position to impose unreasonable restrictions on consumers in the market.

2    By continually adjusting its market strategies and technical means, Amazon created a sense of

3    powerlessness among consumers, making it difficult for them to effectively protect their rights.

4    **2. Legal Analysis:**

5    233.    Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451 (1992): When

6    a company holds market dominance, it must not harm consumer rights or exclude competitors

7    through unfair market practices. Amazon's behavior is similar to the illegal actions in the Kodak

8    case, where consumer rights were sacrificed to maintain market advantage.

9    **2.8.8. Widespread Consumer Complaints and Dissatisfaction:**

10    **1. Widespread Consumer Complaints:**

11    234.    On platforms like Better Business Bureau (BBB) and Consumer Affairs, Amazon

12    has received numerous complaints regarding account management, customer support, and

13    unjustified account suspensions. Consumers have consistently reported that Amazon lacks

14    transparency and effective communication channels when handling these issues, leading to

1    widespread consumer dissatisfaction.

2        235.    These complaints reveal not only systemic flaws in how Amazon handles

3    consumer issues but also widespread dissatisfaction with Amazon's abuse of market dominance.

4    This widespread dissatisfaction further indicates that Amazon's market behavior has caused

5    substantial harm to consumers.

6        **2. Supporting Evidence:**

7        236.    According to data from BBB and Consumer Affairs, Amazon generated 47,510

8    complaints in the past three years, primarily involving account management and customer

9    support issues. On Consumer Affairs, Amazon's rating is only 1.3 stars, reflecting widespread

10    consumer dissatisfaction with its services.

11        237.    These complaints show that Amazon's behavior has severely damaged its market

12    image, and these issues are widespread among consumers, further proving the harm caused by

13    its abuse of market dominance.

14    **2.8.9. Support from Media Reports and Expert Testimonies:**

1    **1. Expert Testimonies:**

2    238.    Analysts at ProMarket suggest that Amazon may be engaging in predatory pricing

3    strategies to dominate the market, which may violate the Sherman Act. Expert testimony

4    indicates that Amazon's low-price sales strategy not only undermines competitors but also

5    destabilizes market competition, threatening the long-term health of the market.

6    239.    Experts also point out that Amazon's actions may be intentional, aimed at

7    eliminating competitors by sacrificing short-term profits to establish a stronger monopoly

8    position in the market. This strategy is not only unfair but also severely disrupts market

9    competition.

10    **2. Media Reports and Wikipedia:**

11    240.    Major media outlets such as The New York Times, The Washington Post, CNN,

12    and Reuters have conducted in-depth analyses of Amazon's market behavior, revealing how it

13    maintains its market advantage through unfair business practices and market manipulation.

14    These reports further illustrate the broad impact of Amazon's market strategies on consumers

1    and competitors.

2        241.    The Wikipedia page "Criticism of Amazon" also provides extensive information,

3    highlighting the widespread criticism Amazon faces on multiple fronts. This criticism comes

4    not only from consumers but also from market analysts and industry experts, further

5    strengthening the scrutiny of Amazon's actions.

6        **3. Legal Analysis:**

7        242.    The information in media reports and Wikipedia enhances the credibility of the

8    plaintiff's allegations and shows that Amazon's behavior has become a focal point of public

9    concern. This information suggests that Amazon's actions are not isolated incidents but

10    systemic issues within its business model.

11    **2.8.10. Summary:**

12        243.    Amazon, by abusing its market dominance, engaged in a series of exclusionary

13    and anti-competitive practices, including account suspensions, order cancellations, anti-

14    discount policies, mandatory use of fulfillment services, and false advertising. These actions

1    not only caused serious economic and emotional damage to the plaintiff but also disrupted the

2    competitive order of the market and harmed consumer rights.

3        244.    Supporting Case Law: In New York Times Co. v. Sullivan, 376 U.S. 254 (1964),

4    the court emphasized the importance of media reporting in exposing unjust market behavior,

5    further supporting the plaintiff's allegations. Media and expert analysis provide strong evidence

6    in this case, indicating that Amazon's actions may violate antitrust laws..

## 7    3. Legal Violations by Apple

## 8    3.1. Violation of Contract Law, California Consumer Legal Remedies Act

## 9    (CLRA), and California Unfair Competition Law (UCL)

### 10    3.1.1. Unlawful Actions

11        245.    Apple Inc. promised the plaintiff a pair of AirPods Pro 2 on May 23, 2024, as

12    compensation for a complaint, but has yet to fulfill this promise. This constitutes the following

13    violations:

14        246.    **1. Breach of Contract:** Apple failed to fulfill its promise, violating contract law

regarding the obligation to perform.

247.    **2. Fraudulent Behavior:** Apple knowingly made a promise to give away the

AirPods while being unwilling or unable to fulfill it, violating the CLRA's provisions on

fraudulent business practices.

248.    **3. Unfair Competition:** Apple's actions led to the plaintiff receiving unfair

treatment, constituting unfair business practices under the UCL.

**3.1.2. Specific Damages**

249.    Due to Apple's breach of contract and fraudulent actions, the plaintiff did not

receive the promised AirPods.

**3.1.3. Supporting Case Law**

250.    **1. Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654 (1958):** Supports

the breach of contract claim.

251.    **2. Outboard Marine Corp. v. Superior Court (1975):** Supports the claim of

fraudulent behavior.

252.    3. **Cel-Tech Communications Inc. v. Los Angeles Cellular Telephone Co., 20**

**Cal. 4th 163 (1999):** Explains the definition of unfair competition.

## 3.2. Violation of the Americans with Disabilities Act (ADA)

### 3.2.1. Overview:

253.    The plaintiff alleges that Apple, in handling the plaintiff's visits to its retail stores,

failed to provide reasonable accommodations and, despite the plaintiff's clear intent to make a

purchase, forcibly evicted them. This behavior constitutes discrimination against the plaintiff,

violating the ADA's provisions on equal treatment and reasonable accommodations, which

directly resulted in severe mental and psychological harm to the plaintiff.

### 3.2.2.  Legal Basis

254.    **Americans with Disabilities Act (ADA, 42 U.S.C. § 12101 et seq.):** Prohibits

discrimination against any individual based on disability and requires public facilities and

service providers to provide equal services and reasonable accommodations to individuals with

disabilities.

255.   **Requirement for Reasonable Accommodation:** The ADA mandates that

businesses ensure that individuals with disabilities can equally enjoy public services and

facilities under the same conditions as others.

**3.2.3. Unlawful Actions**

256.   **1. Failure to Provide Reasonable Accommodation:** On July 27, 2024, the

plaintiff, due to mental health issues, needed to use equipment in the Apple Store to handle

important matters, but Apple failed to provide any form of support or accommodation. This

behavior violated the ADA's principle of reasonable accommodation, depriving the plaintiff of

the opportunity to equally use public services.

257.   **2. Discriminatory Treatment and Forcible Eviction:** In the second incident on

July 31, 2024, despite the plaintiff clearly expressing the intent to purchase equipment, Apple's

staff and security not only failed to assist but also forcibly evicted the plaintiff without

reasonable explanation, again calling the police. This eviction, after the plaintiff had clearly

stated their intent to purchase, demonstrates that Apple's treatment of the plaintiff differed from

1    its treatment of other customers, constituting discrimination based on the plaintiff's health

2    condition, in violation of the ADA's principles of equal treatment.

3    258.    3. **Psychological Harm from Police Eviction:** Apple's staff and security called

4    the police twice to evict the plaintiff without providing reasonable explanations or evidence,

5    especially in the second incident where the plaintiff had clearly expressed the intent to purchase.

6    This not only caused severe psychological harm to the plaintiff but also exacerbated their

7    anxiety and other mental health issues.

8    **3.2.4. Specific Damages**

9    259.    Due to Apple's discriminatory behavior and refusal to provide reasonable

10   accommodation, the plaintiff suffered severe mental and psychological harm:

11   260.    **Worsening Mental Health:** Apple's discriminatory treatment and two public

12   evictions, particularly the forcible eviction after the plaintiff clearly expressed the intent to

13   purchase during the second incident, directly led to the plaintiff's deteriorating mental health.

14   The plaintiff felt humiliated, isolated, and helpless after the eviction, worsening pre-existing

1   anxiety and other psychological issues, leading to further deterioration in mental well-being.

2       261.    **Mental Stress and Social Isolation:** Apple's actions caused significant mental

3   stress to the plaintiff and further isolated them, making it difficult for the plaintiff to live and

4   work confidently in public. This mental stress significantly reduced the plaintiff's quality of

5   life and severely impacted their ability to manage legal affairs.

6   **3.2.5. Causation Between Violations and Damages**

7       262.    Apple's failure to provide reasonable accommodation and discriminatory

8   treatment, including the forcible eviction of the plaintiff even after they clearly expressed the

9   intent to purchase, directly led to the deterioration of the plaintiff's mental health. Apple's

10  actions violated the ADA's principles of equal treatment and reasonable accommodation,

11  causing the plaintiff to suffer humiliation in public and worsening their mental health.

12  **3.2.6. Supporting Case Law**

13      263.    **Olmstead v. L.C., 527 U.S. 581, 598 (1999):** The court stated that public service

14  providers must offer equal service opportunities to individuals with disabilities, and failure to

treat them equally or provide reasonable accommodation constitutes a violation of the ADA.

This supports the plaintiff's claim against Apple for failing to provide reasonable

accommodation.

264.    **Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1115 (9th Cir. 2000):** The court

confirmed that the behavior of public service providers directly led to psychological harm for

individuals with disabilities. Apple's discriminatory behavior and failure to provide reasonable

accommodation are similar to the circumstances in this case, constituting substantial harm to

the plaintiff.

## 3.3. Defamation

### 3.3.1. Overview:

265. The Plaintiff accuses Apple of publicly and baselessly claiming that the Plaintiff

harassed its employees during two incidents of eviction. These false accusations

were not only disseminated within the Apple Store but also further amplified by

the involvement of the police, severely damaging the Plaintiff's reputation, mental

1    health, and exacerbating the Plaintiff's emotional distress, constituting defamation.

2    **3.3.2. Legal Basis**

3    **California Civil Code §§ 44-46:**

4    266. In California, defamation includes any false statement, whether written or spoken,

5    that damages the reputation of another person. Defamation can be either slander

6    (spoken defamation) or libel (written defamation). If the statement is made publicly

7    and causes harm, it constitutes a violation.

8    **False Statements and Public Dissemination:**

9    267. The core of defamation lies in the Defendant's dissemination of false statements to

10   the public without any factual basis, leading to damage to the Plaintiff's reputation.

11   **3.3.3. Unlawful Actions**

12   a.   False Statements and Dissemination:

13   268. - First Eviction on July 27, 2024: In this incident, Apple employees falsely accused

14   the Plaintiff of harassing its employees and publicly disseminated this false

1    accusation without any factual basis or evidence. This statement was widely spread

2    through the involvement of store employees, security personnel, and the police,

3    severely damaging the Plaintiff's reputation.

4    269.- Second Eviction on July 31, 2024: Despite the Plaintiff clearly expressing the

5    intent to purchase a device, Apple again evicted the Plaintiff based on similar false

6    accusations and once again summoned the police. This series of actions further

7    spread the misunderstanding about the Plaintiff, increasing the Plaintiff's emotional

8    distress.

9    b.   Malice or Gross Negligence:

10    270.    - Apple publicly accused the Plaintiff of harassing its employees without

11    evidence, showing gross negligence or possibly malice. This behavior completely

12    disregarded the Plaintiff's legal rights and deliberately or seriously ignored the truth.

13    **c. Public Dissemination and Damage to Reputation**

14    271.    - Through its employees, security personnel, and the involvement of the police,

1    Apple disseminated these false statements in public, leading to severe damage to

2    the Plaintiff's reputation and social image. As a result, the Plaintiff suffered

3    significant psychological harm and social isolation.

4    **3.3.4. Specific Damages**

5    Damage to Reputation:

6    272. The Plaintiff's reputation was severely damaged due to Apple's false statements and

7    public dissemination. The Plaintiff was wrongly depicted as a harasser, and this

8    negative image caused the Plaintiff's social standing to decline, further

9    exacerbating the Plaintiff's anxiety and mental health issues.

10    Deterioration of Mental Health:

11    273. As a result of these false statements, the Plaintiff experienced severe

12    psychological distress, including humiliation, anxiety, insomnia, and depression.

13    The Plaintiff was thus compelled to seek further psychological treatment and

14    needed to use stronger sedatives to cope with the worsening mental state.

115

Social Isolation and Humiliation:

274. The two public evictions and police involvement, especially after the Plaintiff

clearly expressed the intent to purchase during the second incident, caused severe

harm to the Plaintiff's social image and self-esteem, leading to feelings of

humiliation and isolation in public.

## 3.3.5. Causation Between Unlawful Actions and Damages**

275. Through false statements and public dissemination, Apple directly caused the

Plaintiff's reputation to be damaged and mental health to deteriorate. These events

directly violated the Plaintiff's legal rights and constituted defamation under

California Civil Code, leading the Plaintiff to suffer humiliation in public and a

continued deterioration of mental health.

## 3.3.6. Case Law Support

276. - **Gertz v. Robert Welch, Inc.**, 418 U.S. 323 (1974): This case law clearly states

that even in matters of public concern, defamation must meet the standard of actual

Case No.:    Document 30-2    08/08/2024 Page 57 of 180 Page ID #: 117

1    malice. This supports the Plaintiff's claim of malicious defamation against Apple

2    in this case.

3    277.- **Milkovich v. Lorain Journal Co.**, 497 U.S. 1 (1990): This case law

4    establishes that false statements, especially when disseminated publicly, constitute

5    defamation. Apple's dissemination of false information accusing the Plaintiff of

6    harassing its employees without evidence meets the defamation standard outlined

7    in this case law.

# VII．Prayer for Relief

## 1. Request for Judgment Declaring Defendants' Actions Unlawful

278.    The plaintiff requests the court to declare that the actions of ACI GIFT CARDS,

LLC , Amazon.com Inc., and Apple Inc. violated relevant federal and California laws,

including but not limited to the Federal Trade Commission Act (FTCA), California Consumer

Legal Remedies Act (CLRA), and California Unfair Competition Law (UCL).

## 2. Request for Economic Damages

### 2.1. Direct Economic Damages

279.    Loss of Gift Card Value: $1,800

280.    Cost of Costco Membership: $60

281.    **Medical Expenses: T**he plaintiff used a medical card and did not directly pay for

the medication. However, the plaintiff argues that this was directly caused by the actions of

Amazon and Apple. The plaintiff requested a printed bill but was informed that due to state

118

1    government payments, a bill could not be provided. The plaintiff requests the court to order the

2    defendants to compensate the California government for the medical expenses.

3    **2.2. Indirect Economic Damages**

4    282.    **Time Cost for Device Usage:** From June 28, 2024, when the computer order was

5    canceled, to July 31, when the plaintiff purchased a computer, the plaintiff made multiple trips

6    to the Apple Store and Hilton hotel to access devices. Each trip required an additional hour and

7    $5 in transportation costs. At $20 per hour, the cumulative loss is $775.

8    283.    **Additional Expenses Due to Inconvenience:** Due to account suspensions, the

9    plaintiff was unable to purchase essential items on Amazon and was forced to buy them offline,

10    incurring additional expenses ($540) and time costs in transportation.

11    284.    **Loss of Efficiency:** Due to the defendants' actions, the plaintiff spent a significant

12    amount of time researching, writing, and organizing evidence for this lawsuit, particularly due

13    to account suspensions. The plaintiff was forced to spend considerable time gathering evidence,

14    submitting proof materials, and handling related matters. The plaintiff estimates a loss of 200

hours, at $20 per hour, resulting in a loss of $4,000.

285.    **Long-Term Treatment Costs:** The plaintiff hopes to undergo commercial

treatment for mental illness in the future. The estimated cost for ongoing psychological

treatment is $50,000.

286.    **Long-Term Income Loss:** Due to the ongoing psychological trauma and the

impact of the defendants' actions, the plaintiff expects to require continued treatment over the

next five years. Due to mental illness, the plaintiff experiences brain fog, memory decline,

decreased learning ability, and confused logical reasoning, directly affecting the ability to study,

work, or engage in other commercial activities. The preliminary estimate is $200,000.

## 2.3. Emotional Distress Damages

287.    The plaintiff requests the court to order the three defendants to jointly compensate

the plaintiff for emotional distress damages in the amount of $1,500,000. The specific reasons

are as follows:

### 2.3.1. Severity of Emotional Distress

288.    Amazon repeatedly suspended the plaintiff's account without reason, even though

the plaintiff had submitted all proof documents. Amazon's refusal to lift the suspension caused

the plaintiff to experience immense psychological pain under economic and legal pressure.

These actions exacerbated the plaintiff's anxiety disorder, leading to multiple panic attacks,

insomnia, depression, and profound despair. Additionally, Apple's breach of contract and

discriminatory actions during two shopping experiences, particularly being forced to leave the

Apple Store and being evicted by the police, further destroyed the plaintiff's sense of dignity

and security, worsening the plaintiff's mental state.

## 2.3.2. Supporting Evidence

**Medical Records**

289.    The plaintiff has sought mental health treatment multiple times since July 2, 2024.

Doctors diagnosed the plaintiff with severe anxiety disorder and prescribed sedatives and other

medications. These records strongly support the causal link between the plaintiff's emotional

distress and the defendants' actions.

**Personal Testimony: See attached**

### 2.3.3. Long-Term Impact

290.    **Diminished Quality of Life:** The plaintiff's quality of life has significantly declined due to emotional distress, with formerly enjoyable daily activities and social life no longer possible. The plaintiff is constantly tormented by emotional pain, unable to return to a normal state of life. In *Cunningham v. Railway Express Agency, Inc. (1981) 52 Or.App. 1025*, the court upheld a claim for emotional distress damages for diminished quality of life.

291.    **Causation Between Emotional Distress and Damages:** The emotional distress caused a sharp decline in the plaintiff's memory, understanding, reasoning, and learning abilities, making it difficult to focus and reducing efficiency in handling matters. In the long term, this will seriously impact the plaintiff's ability to survive, work, or engage in business development in the United States. In *Newman v. Pers. Representative of the Estate of Myron T. Silverman (1996) 84 F.3d 955*, the court upheld a claim for compensation for the impact of emotional distress on professional ability, which also led to substantial economic losses.

### 2.3.4. Case Law Support

292.    In *Martinez v. California Superior Court*, the plaintiff was awarded $7.97 million in damages, including emotional distress damages, for wrongful termination.

293.    Given the severity of the emotional distress and its long-term impact on the plaintiff's life, the plaintiff requests the court to order the defendants to pay emotional distress damages of $1,500,000. This amount is intended to compensate the plaintiff for the immense psychological trauma caused by the defendants' malicious actions and to serve as a warning against such improper behavior by the defendants.

## 2.4. Punitive Damages

294.    Plaintiff Yun Peng requests that the court order Amazon.com, Inc. and Apple Inc. to pay punitive damages to deter their malicious, improper, and fraudulent behavior. Given the extreme harm caused to the plaintiff by the defendants' actions, and the evidence of defendants' malice and disregard for consumer rights, the request for punitive damages is necessary and justified.

### 2.4.1. Impact on Plaintiff:

295.    The detailed explanation of economic and emotional damages has been provided

in previous sections and will not be repeated here.

### 2.4.2. Egregiousness of Defendants' Conduct:

296.    The defendants' actions, including but not limited to repeatedly suspending

accounts without just cause, ignoring clear warnings and requests, disregarding humanitarian

considerations, and engaging in monopolistic practices, demonstrate a blatant disregard for

consumer rights and have resulted in severe unfair outcomes. The details of these violations

have been thoroughly discussed in the allegations section.

### 2.4.3. Violations of Multiple Laws:

297.    Amazon's actions violated multiple laws, with the most severe being fraudulent

conduct and breach of contract. These illegal actions directly resulted in significant economic

and emotional damage to the plaintiff. Additionally, Amazon infringed upon the plaintiff's

basic survival rights, violating the Federal Trade Commission Act (FTCA) and several

1    California consumer protection laws (CLRA, UCL, CCPA, etc.). These actions not only

2    harmed the plaintiff personally but also threatened fair market competition.

3    **2.4.4. Widespread and Systemic Issues:**

4        298.    Systemic Issues with ACI GIFT CARDS, LLC : Systemic issuance of gift cards

5    with insufficient disclosure of terms.

6        299.    Systemic Issues with Amazon:

7        300.    Automated Account Suspensions

8        301.    Restricted Evidence Submission

9        302.    Lack of Appeal Channels

10       303.    Customer Support Deficiencies

11       304.    FTC Allegations Against Amazon

12       305.    Complaints and Negative Reviews from BBB and Consumer Affairs

13       306.    Media Investigations

14       307.    Violation of the Sherman Act

**2.4.5. Defendants' Financial Strength:**

308.    **Amazon**: In 2022, Amazon had total revenue of $469.8 billion and net income of

$33.4 billion. Amazon dominates the global e-commerce and cloud computing markets, and its

enormous financial resources mean that ordinary compensation amounts would not have a

substantial deterrent effect.

309.    **Apple:** In 2022, Apple had total revenue of $394.3 billion and net income of $94.5

billion. As one of the most valuable companies globally, Apple's financial strength is immense.

Regular compensation would have minimal impact on its financial situation, necessitating

substantial punitive damages to ensure that Apple does not repeat similar behavior.

**2.4.6. Necessity of Punitive Damages:**

310.    The primary purpose of punitive damages is to punish and prevent defendants and

other businesses from engaging in similar illegal actions in the future. Considering the financial

power and market dominance of Amazon and Apple, ordinary economic compensation is

insufficient to exert substantial deterrent effects. Only through sufficiently high punitive

damages can these companies feel the financial pressure necessary to compel them to improve

systemic issues and avoid continuing such behavior. Given the egregiousness of the defendants'

actions and their widespread impact on consumers, substantial punitive damages are both

necessary and serve to warn other companies, upholding higher standards of business ethics

and legality.

**2.4.7. Reasonableness and Proportionality of Punitive Damages:**

311.    The reasonableness of punitive damages is often based on the ratio to actual

damages. According to the U.S. Supreme Court's ruling in *State Farm Mutual Automobile

Insurance Co. v. Campbell*, punitive damages should not be excessively disproportionate to

actual damages, typically recommended to be within a 9:1 ratio. Given that ACI GIFT CARDS,

LLC   only had deficiencies in its issuance process and that the plaintiff's harm was not as

severe, the plaintiff does not pursue punitive damages against ACI GIFT CARDS, LLC .

However, considering Amazon's enormous financial strength and the severe impact of its

actions on the plaintiff, with net income reaching $33.4 billion, the plaintiff seeks punitive

damages of $30 million against Amazon. Although Apple's net income is $94.5 billion, the case

does not provide extensive evidence of systematic and widespread violations, so the plaintiff

seeks punitive damages of $5 million against Apple. These amounts are intended to exert

sufficient financial pressure on both companies, creating a substantial deterrent effect and

preventing the defendants and other companies from engaging in similar behavior in the future.

## 2.4.8. Legal Support and Precedents:

312.    The plaintiff's request for punitive damages is based on California Civil Code

Section 3294, which allows for punitive damages in cases of malice, oppression, or fraudulent

conduct. Supporting precedents include:

313.    **BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996):** The court awarded

$4 million in punitive damages in response to the defendant's failure to disclose information

adequately.

314.    **State Farm Mutual Automobile Insurance Co. v. Campbell,** 538 U.S. 408

(2003): The court initially awarded $145 million in punitive damages due to the defendant's

malicious refusal to defend.

315.    **Philip Morris USA v. Williams, 549 U.S. 346 (2007):** The court awarded $79 million in punitive damages due to the defendant's disregard for consumer health.

316.    In summary, the plaintiff's claim for $35 million in punitive damages is both proportionate to the severity of the harm and aligned with the economic strength of the defendants. This amount will create sufficient financial pressure on the defendants and serve as a deterrent, ensuring that they and other companies refrain from engaging in similar behavior in the future. The plaintiff requests that the court grant this punitive damages claim to enforce accountability and promote respect for consumer rights.

## 3. Injunctive Relief for Systemic Issues

## 3.1. The plaintiff requests the court to order ACI GIFT CARDS, LLC and Amazon to take the following actions to correct their systemic issues:

317.    **Display of Full Terms and Conditions:** Ensure that the complete terms and conditions are prominently displayed across all sales channels and require consumer

1    confirmation before purchase.

2    318.    **Multilingual Support:** Provide multilingual support for non-English speakers,

3    particularly in translating contract terms and offering customer service, to ensure all consumers

4    fully understand their rights and obligations.

5    319.    **Improvement of Customer Support and Complaint Handling:** Improve

6    customer support and complaint handling mechanisms, ensuring that customers can easily

7    submit complaints and receive assistance, particularly by providing an appeal process to

8    address account suspensions.

9    320.    **Increased Account Management Transparency:** Ensure that users receive

10    detailed explanations for account suspensions and clear steps for account recovery.

11    321.    **Regular Audits and Compliance Checks:** The defendants should undergo

12    regular independent third-party audits to ensure compliance with customer service, privacy

13    protection, and account management standards, with the audit results made public.

14    322.    **Prohibition of Monopolistic Behavior:** Prohibit the defendants from engaging

1    in monopolistic practices.

2    **3.2. The plaintiff requests the court to order Apple to take the following**

3    **actions:**

4    323.    Ensure Reasonable Accommodations for Disabled Customers: Apple should train

5    its employees to recognize and address the specific needs of disabled customers, ensuring they

6    receive reasonable accommodations.

7    **4. Reinstatement of Plaintiff's Amazon Accounts**

8    324.    The plaintiff requests the court to order Amazon to reinstate the plaintiff's two

9    accounts and to refrain from any unreasonable suspensions in the future.

10    325.    The plaintiff requests the court to order Apple to fulfill its promise and

11    compensate the plaintiff with the AirPods Pro.

12    **5. Public Apology**

13    326.    The plaintiff requests the court to order Apple Inc. and its store management to

14    publicly apologize to the plaintiff and compensate them for the emotional distress caused by

the discriminatory eviction, ensuring that such unjustified actions do not occur in the future.

## 6. Other Equitable and Appropriate Relief

327.    The plaintiff requests the court to provide any other equitable and appropriate

relief deemed just, based on the seriousness and broad impact of the defendants' actions, to

fully protect consumer rights.

# VIII .  Conclusion

328.    1. Plaintiff Yun Peng has suffered severe economic and non-economic losses

directly resulting from the improper actions of the defendants, ACI GIFT CARDS, LLC , and

Amazon. The defendants' actions not only violate multiple California laws but also

significantly harm consumer rights, especially those of vulnerable consumers.

329.    2. This case involves not only the plaintiff's personal rights but also the vital

interests of a broad consumer base. As industry giants, the defendants' actions have a far-

reaching impact on the entire e-commerce sector.

330.    3. The plaintiff respectfully urges the court to consider the uniqueness and

significance of this case and to deliver a just judgment that upholds the law's integrity, protects

consumer rights, and promotes the healthy development of the e-commerce industry.

# IX .  Demand for Jury Trial

331.    Pursuant to the Seventh Amendment of the United States Constitution and relevant state laws, the plaintiff hereby formally requests a jury trial in this case. The plaintiff believes that the factual issues involved in this case, particularly those concerning breach of contract, unfair business practices, fraud, emotional distress, and punitive damages claims, are best decided by a jury. These issues are easily understandable to ordinary citizens, and a jury is better positioned to evaluate the evidence and deliver a fair verdict.

332.    Therefore, the plaintiff respectfully requests that a jury trial be granted for all issues in this case.

# X .   Anticipated Defenses and Rebuttals

333.    Plaintiff anticipates that the defendants may present several defenses to justify

their actions. The plaintiff provides the following preemptive responses to rebut the potential

defenses raised by the defendants.

## 1. Reasonableness and Fairness Defense

## 1.1. Defendants' Potential Argument

334.    The defendants may argue that their actions in suspending accounts and canceling

orders were reasonable, based on legitimate business judgment, and were intended to prevent

fraud or other misconduct.

## 1.2. Plaintiff's Rebuttal

### 1.2.1. Lack of Transparency and Due Process

335.    When the defendants suspended accounts and canceled orders, they did not

provide specific transaction details, times, amounts, or other relevant information, only vaguely

mentioning "unusual payment activity." This vague accusation prevented the plaintiff from

1    fully understanding the nature of the problem and from defending themselves. Such lack of

2    transparency and due process violates the principles of fair dealing and infringes on the

3    plaintiff's basic rights. Under California Civil Code §1572, all parties to a contract are obligated

4    to perform in good faith and fairness, which the defendants' actions clearly do not meet.

5       336.    **Case Law Support: In** *Outboard Marine Corp. v. Superior Court, 52 Cal. App.

6    3d 30 (1975)*, the court held that if a company withholds or obscures important information,

7    it may constitute fraud or unfair business practices. This precedent supports the plaintiff's

8    argument about the lack of transparency.

9    **1.2.2. Unfair Restrictions on Evidence Submission**

10      337.    During the process of requiring the plaintiff to submit proof documents, the

11   defendants imposed strict limits on the number of images and text explanations the plaintiff

12   could submit. This restriction severely impaired the plaintiff's ability to provide evidence,

13   preventing them from adequately defending their legitimate actions. Such unilateral restrictions

14   are clearly unfair and violate California consumer protection laws.

136

338.     **Case Law Support: In** *Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d

1313 (11th Cir. 2015)*, the court recognized that if one party imposes unfair restrictions, it may

lead to the invalidation of the contract terms or an unfair judgment. This case supports the

plaintiff's argument about the unfair restrictions on evidence submission.

### 1.2.3. Unreasonableness of Multiple Account Suspensions

339.     The defendants repeatedly suspended the plaintiff's accounts without reasonable

explanation and repeatedly requested the plaintiff to submit the same proof documents. Even

after the plaintiff provided all requested documents, the defendants continued to suspend the

accounts. This repetitive behavior shows a lack of reasonableness and fairness in handling the

plaintiff's account issues. Under the California Unfair Competition Law (UCL), such unfair

business practices should be subject to legal sanctions.

340.     **Case Law Support: In** *Cel-Tech Communications, Inc. v. Los Angeles Cellular

Telephone Co., 20 Cal. 4th 163 (1999)*, the court confirmed that unfair business practices

should be constrained by the UCL and may lead to legal sanctions. This case supports the

137

plaintiff's argument about the unreasonableness of multiple account suspensions.

### 1.2.4. Disregard for Plaintiff's Special Circumstances

341.    The plaintiff had clearly communicated their language barriers and mental health issues in multiple communications with the defendants and requested humanitarian consideration to reinstate the orders. However, the defendants ignored these requests and continued to take severe suspension measures against the plaintiff. Such actions not only lack compassion but also violate basic business ethics and legal requirements.

342.    **Case Law Support: In** *Carter v. SSC Odin Operating Co., LLC, 237 Ill. 2d 30 (2010)*, the court ruled that companies have an obligation to consider the special needs of customers when handling issues, and failure to do so may constitute unfair business practices. This case supports the plaintiff's argument that the defendants disregarded their special circumstances.

## 2. Unintentional Conduct Defense

## 2.1. Defendants' Potential Argument

343.    The defendants may argue that their actions were unintentional, resulting from

system errors or misjudgments.

## 2.2. Plaintiff's Rebuttal

### 2.2.1. Unintentional Conduct Does Not Exempt Liability

344.    Even if the defendants' actions were initially unintentional, once the plaintiff

informed them of their special circumstances and the impact of the actions, the defendants'

continued refusal to take corrective measures cannot be considered unintentional. The

defendants' persistent errors and refusal to correct them should result in legal liability.

345.    **Case Law Support: In** *Ford v. Revlon, Inc., 153 Ariz. 38 (1987)*, the court

confirmed that even if the initial conduct was unintentional, continued improper conduct could

result in legal liability. This case supports the plaintiff's argument that unintentional conduct

does not exempt the defendants from responsibility.

### 2.2.2. Systemic Behavior Liability

346.    If the defendants claim that system errors caused the problems, then the systemic

1    behavior itself should be scrutinized, and system deficiencies cannot serve as an excuse to

2    exempt them from liability. The defendants should pay punitive damages for systemic issues

3    to ensure that similar situations do not occur again.

4        347.    **Case Law Support: In** *In re Apple Inc. Device Performance Litigation, 386 F.

5    Supp. 3d 1155 (N.D. Cal. 2019)*, the court ruled that companies should be held liable and pay

6    corresponding compensation for consumer losses caused by systemic issues. This case supports

7    the plaintiff's argument for liability due to systemic behavior.

8    ## 3. Defense of Provision of Terms

9    ## 3.1. Defendants' Potential Argument

10       348.    The defendants may argue that they disclosed important terms through appropriate

11   means and that users agreed to these terms when using the products, such as providing the "See

12   full terms: amazon.com/gc-legal" link.

13   ## 3.2. Plaintiff's Rebuttal

14   ### 3.2.1. Amazon Should Have Fully Disclosed Important Terms and User Agreements:

349.    Even if Amazon used the "See full terms: amazon.com/gc-legal" link, it should

have been displayed in a prominent manner, including but not limited to:

350.    **Font Size and Style:** Information should be presented in a sufficiently large font,

usually at least as large as other important information, and should use a clear and readable

style to attract consumer attention.

351.    **Placement:** Information should be placed in a conspicuous location, such as the

front of the gift card or with a large heading.

352.    **Contrast and Color:** High contrast color combinations should be used, such as

black text on a white background, to ensure readability.

353.    **Clarity and Simplicity:** Clear and straightforward language should be used to

ensure the information is easy to understand.

354.    In this case, although the defendants used contrasting colors and concise

language, the overall font size used by the defendants was small, the "See full terms:

amazon.com/gc-legal" link was placed at the very bottom of the back and was accompanied by

1    other information, ultimately making it difficult to attract consumer attention and be noticed,

2    which does not meet the standard for conspicuous disclosure.

3    **3.2.2. Case Law Support**

4        355.    In Specht v. Netscape Communications Corp., 306 F.3d 17 (2d Cir. 2002)*, the

5    court ruled that if contract terms are not disclosed in a conspicuous manner, those terms may

6    not be enforceable. This case supports the plaintiff's argument that the terms were not

7    conspicuously disclosed.

8    # 4. All Relevant Information Provided via Link Defense

9    ## 4.1. Defendants' Potential Argument

10       356.    The defendants may argue that all essential contractual terms and information

11   were provided to the plaintiff through a link on the gift card, ensuring that the plaintiff had

12   access to all relevant information at the time of purchase.

13   ## 4.2. Plaintiff's Rebuttal

14   **4.2.1. Legal Requirements and Definition of Material Terms:**

357. **Legal Requirements:** Under the California Consumer Legal Remedies Act (CLRA), the Federal Trade Commission Act (FTC Act), and the California Unfair Competition Law (UCL), merchants are prohibited from concealing, suppressing, or failing to disclose material facts. Material terms include, but are not limited to, non-refundable policies, lost or stolen disclaimers, and dispute resolution clauses, all of which directly affect consumer rights and must be prominently disclosed by law.

358. **Case Law Support:** In *Nguyen v. Barnes & Noble Inc., 763 F.3d 1171 (9th Cir. 2014)*, the court ruled that terms hidden in a link do not guarantee informed consent from the consumer, and merchants have a responsibility to prominently display all essential terms.

359. **Definition of Material Terms:** Material terms refer to those that significantly impact consumer rights, such as refund policies, liability for security, and methods of dispute resolution. Amazon gift cards, due to these terms being directly related to the security of consumer property and rights protection, are considered typical material terms.

**4.2.2. Visibility and Prominence of Information:**

143

360.    **Necessity of Prominent Disclosure:** According to the aforementioned laws, merchants are obligated to disclose material terms in a prominent and clear manner. Simply providing a link does not ensure that all consumers will see and understand these essential terms.

361.    **Practical Limitations:** In practical purchasing scenarios, consumers typically do not immediately visit a link to review detailed terms. Merchants have an obligation to ensure that material terms are directly displayed at the time of purchase, allowing consumers to make informed decisions.

362.    **Case Law Support: In** *Specht v. Netscape Communications Corp., 306 F.3d 17 (2d Cir. 2002)*, the court emphasized the importance of informed consent, stating that if consumers cannot clearly understand the contract terms, those terms may not be enforceable.

#### 4.2.3. Principle of Informed Consent:

363.    **Importance of Informed Consent:** The principle of informed consent requires that consumers have the right to know all material terms and conditions when purchasing a

144

product. Amazon's failure to directly display key terms on the gift card and its failure to clearly

state "use constitutes acceptance of terms" prevented consumers from fully understanding these

terms at the time of purchase, violating the principle of informed consent.

364.    **Case Law Support:** Again, in *Nguyen v. Barnes & Noble Inc., 763 F.3d 1171

(9th Cir. 2014)*, the court ruled that terms hidden in a link do not ensure informed consent

from the consumer, and merchants have a responsibility to prominently display all essential

terms.

# 5. Defense Against Legitimacy and Reasonableness of Account

# Suspension and Process

## 5.1. Defendants' Potential Argument

### 5.1.1. Detailed Instructions and Process Defense

365.    Amazon may argue that they provided users with detailed explanations through

pop-up windows and instructions on the website, clearly explaining why the information was

needed and offering a comprehensive process to resolve account suspensions. The defendants

1    may claim that these explanations were sufficiently clear for users to understand and comply

2    with the required document submissions.

### 5.1.2. Reasonable Security Measures Defense

4    366.    Amazon might argue that their actions were justified as reasonable security

5    measures aimed at protecting user accounts. Temporarily suspending accounts and requiring

6    verification in response to "unusual payment activity" are reasonable steps to prevent potential

7    fraud.

### 5.1.3. Standardized Process Reasonableness Defense

9    367.    Amazon might further argue that their standardized processes and requirements,

10    such as limiting users to five images and 200 words, are designed to ensure that all users are

11    treated equally when addressing account issues. They may claim that this standardized process

12    is necessary to maintain system efficiency and consistency, rather than intentionally causing

13    inconvenience to users.

### 5.1.4. Failure to Fulfill User Responsibilities Defense

146

368.    Amazon may argue that the plaintiff failed to submit sufficient or compliant

documents as required, which is why the account suspension issue was not resolved promptly.

The defendants may claim that the continued problem lies in the plaintiff's failure to fulfill their

burden of proof.

## 5.2. Plaintiff's Rebuttal

### 5.2.1. Instructions Were Insufficiently Specific

369.    Although Amazon provided basic explanations regarding the need for information,

these explanations were too vague and did not clearly specify which payment activities were

considered unusual or what specific documents were required to lift the suspension. The lack

of clear guidance made it difficult for users to provide the necessary evidence effectively. This

vagueness increased the burden on users to prove their case and did not meet the legal standard

for information transparency.

370.    **Case Law Support: In** *Outboard Marine Corp. v. Superior Court (1975)*, the

court ruled that if a company withholds or obscures important information, it may constitute

1    fraud or unfair business practices. Similarly, Amazon's failure to provide sufficiently specific

2    information could be seen as lacking transparency.

3    **5.2.2. Balancing Security Measures with Information Transparency**

4    371.    While Amazon's temporary suspension measures may have been intended to

5    protect account security, these measures must be balanced with the user's right to information

6    and equal treatment. Amazon's failure to provide detailed guidance put users at an unfair

7    disadvantage when dealing with account suspensions. The law requires companies to provide

8    sufficient explanations and support to ensure users can effectively protect their rights while

9    ensuring security.

10    372.    **Case Law Support: In** *FTC v. AMG Services, Inc. (2016)*, the court confirmed

11    that unauthorized use of user data and lack of transparency in services could constitute unfair

12    or deceptive business practices. This supports the argument that Amazon's security measures

13    need to be balanced with information transparency, or they could be deemed unfair practices.

14    373.    Additionally, in FTC v. Cyberspace.com LLC (2006), the court similarly ruled

1    that misleading consumers by failing to clearly disclose essential terms and conditions

2    constitutes unfair or deceptive practices under the Federal Trade Commission Act. This case

3    reinforces the principle that consumer protection requires transparency, particularly in the

4    presentation of key contractual terms.

5    **5.2.3. Conflict Between Standardized Processes and Individual Cases**

6    374.    Although Amazon's standardized processes are generally intended to improve

7    efficiency, the rigidity of these processes may overlook the specific needs of individual users

8    in complex or sensitive situations. The limitations of five images and 200 words were

9    inadequate for presenting all relevant evidence, restricting the user's ability to prove the

10    legitimacy of their payments. This restriction resulted in an unfair outcome, as the user was

11    unable to fully present their case.

12    375.    **Case Law Support: In** *A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d

13    473 (1982)*, the court ruled that if contract terms are overly unreasonable and difficult to fulfill,

14    those terms may be deemed invalid. While Amazon's standardized process may be suitable for

1    most cases, it may be considered unreasonable when it comes to special circumstances.

2    **5.2.4. Plaintiff Fulfilled Reasonable Burden of Proof:**

3        376.    The plaintiff submitted all requested documents within the system's allowed

4    limits and made every effort to explain the legitimacy of the payments. However, due to

5    Amazon's system limitations and lack of feedback, the account suspension issue remained

6    unresolved despite the plaintiff fulfilling their burden of proof. The responsibility does not lie

7    with the plaintiff but with Amazon, which failed to provide a reasonable and sufficient

8    resolution path.

9        377.    **Case Law Support: In** *Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654

10    (1958)*, the court confirmed that if one party fails to fulfill its obligation of good faith and fair

11    dealing, it must bear responsibility for the losses suffered by the other party. Since the plaintiff

12    fulfilled their reasonable burden of proof, Amazon should be held responsible for the

13    consequences due to their failure to provide adequate support and guidance.

14    # 6. Apple's Reasonable Business Judgment Defense

## 6.1. Defendants' Potential Argument

378.    Apple may argue that their decision to remove the plaintiff from the store was based on reasonable business judgment, aiming to maintain order in the store and ensure the safety of other customers and employees. The defendants may further argue that store staff and security have the discretion to determine appropriate measures, making the removal legitimate and justified.

## 6.2. Plaintiff's Rebuttal

### 6.2.1. Lack of Reasonable Explanation

379.    The plaintiff repeatedly requested a reasonable explanation and specific evidence during the removal but was not provided with a clear explanation of how the plaintiff's behavior threatened store order or safety. The removal appeared arbitrary and excessive, lacking justifiable reasons and supporting evidence.

380.    **Case Law Support:** In *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*, the court established the burden-shifting framework for proving discriminatory

151

practices in employment decisions. This principle can be applied here to argue that the

defendant's actions, lacking reasonable explanation and transparency, could be construed as

unfair practices under similar scrutiny.

**6.2.2. Discriminatory Treatment**

381.    The plaintiff clearly expressed an intent to purchase and behaved appropriately

within the store, without causing any disruption or threat. However, the defendants chose to

remove the plaintiff while not taking the same action against other customers, indicating

discriminatory treatment, particularly based on the plaintiff's status as a person with a disability.

This behavior violates the Americans with Disabilities Act (ADA).

382.    **Case Law Support: In** *EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S.

768 (2015)*, the court ruled that a company could be in violation of anti-discrimination laws

if it treated customers differently without reasonable cause.

**6.2.3. Psychological Harm**

383.    The defendants' removal not only occurred without justifiable reasons but also

1    caused significant psychological harm to the plaintiff. The plaintiff had already endured

2    multiple instances of unfair treatment, and this removal exacerbated their anxiety and

3    depression, further affecting their quality of life and mental health.

4        384.    **Case Law Support: In** *Doe v. City of Lafayette, 377 F.3d 757 (7th Cir. 2004)*,

5    the court found that wrongful removal leading to psychological harm could constitute a

6    legitimate basis for a claim.

# 7. Apple's Safety Policy Enforcement Defense

## 7.1. Defendants' Potential Argument

9        385.    Apple may argue that the decision to remove the plaintiff was in line with

10    company policies and aimed at ensuring store safety. The defendants might argue that store

11    staff and security believed the plaintiff's actions could pose a threat to store safety, and thus,

12    took necessary measures to protect other customers and employees.

## 7.2. Plaintiff's Rebuttal

### 7.2.1. Lack of Factual Basis

386.    At the time of removal, the plaintiff did not exhibit any threatening behavior nor

violated any store rules. The defendants did not provide any actual evidence, such as

surveillance footage or employee reports, to substantiate the claim that the plaintiff's behavior

posed a safety threat. Therefore, the removal lacks a factual basis.

**Case Law Support:**

387.    In Lundy v. California Realty (1985), the court addressed the issue of eviction

from private premises, highlighting that such actions must be reasonable and based on clear

evidence of misconduct. This case is more directly applicable to situations involving disputes

over the justification for evicting an individual from a commercial establishment.

**7.2.2. Unfair Treatment**

388.    The defendants' removal of the plaintiff was clearly unfair, especially when other

customers were allowed to use the store facilities without issue. The plaintiff was removed

solely due to unreasonable safety concerns, and this unfair treatment violates the principle of

equal treatment.

389.    **Case Law Support:** In *Batson v. Kentucky, 476 U.S. 79 (1986)*, the court

prohibited discriminatory practices in jury selection, which set a precedent for identifying and

eliminating discriminatory actions in legal and business practices. This case supports the

argument that the defendant's actions may constitute unfair and discriminatory behavior.

**7.2.3. Violation of Reasonable Accommodation Obligations:**

390.    As a person with disabilities, the plaintiff has the right to reasonable

accommodation to ensure equal participation in and enjoyment of services provided by the

defendants. When handling the plaintiff's request, the defendants failed to provide any

reasonable accommodation, such as language support or privacy protection, and instead chose

to remove the plaintiff, violating the reasonable accommodation obligations outlined in the

Americans with Disabilities Act (ADA).

391.    **Case Law Support: In** *EEOC v. Federal Express Corp., 513 F.3d 360 (4th Cir.

2008)*, the court found that the failure to provide reasonable accommodations constituted

discrimination against persons with disabilities.

# 8. Apple's Non-Discrimination Defense

## 8.1. Defendants' Potential Argument

392.    Apple may argue that their removal of the plaintiff was not based on discrimination but on maintaining order and safety in the store, and that they applied the same standards and procedures to all customers.

## 8.2. Plaintiff's Rebuttal

### 8.2.1. Inconsistency in Actions:

393.    Apple did not apply the same removal measures to other customers in similar situations but instead treated the plaintiff differently in this specific instance. This inconsistency in behavior can serve as indirect evidence of discrimination.

394.    **Case Law Support: In** *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*, the court established the "McDonnell Douglas test," which is used to determine whether an employer applied consistent behavior standards in discrimination cases. Similar standards can be applied to service providers to assess whether they treated customers

consistently.

**8.2.2. Overreaction:**

395.  Even if Apple claims their actions were to maintain order or safety, Apple's response was excessive and unnecessary. For example, removing the plaintiff without a clear threat or actual issue is disproportionate, indicating potential bias or stereotypes.

396.  **Case Law Support: In** *In Robinson v. Jacksonville Shipyards, Inc. (1991), the court examined discriminatory practices in a workplace context, providing a more focused analysis on how differential treatment based on protected characteristics, such as health conditions, can constitute discrimination.

**8.2.3. Failure to Provide Reasonable Accommodations:**

397.  Even if Apple argues that their actions were not discriminatory, Apple failed to provide reasonable accommodations for the plaintiff, especially when the plaintiff clearly expressed their intent to purchase and their special needs. Under the Americans with Disabilities Act (ADA), Apple is required to provide necessary accommodations to ensure that

persons with disabilities can enjoy services on equal terms.

398.    **Case Law Support: In** *EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S.

768 (2015)*, the court ruled that if an employer fails to provide reasonable accommodations

and their actions have an adverse impact on a particular group, it may constitute unlawful

conduct even if it was not directly motivated by discriminatory intent.

**8.2.4. Subjective Intent vs. Objective Effect:**

399.    Even if Apple claims that they had no discriminatory intent, the objective effect

of their actions still resulted in actual discrimination against the plaintiff.

400.    **Case Law Support: In** *Washington v. Davis, 426 U.S. 229 (1976)*, the court

ruled that even if a policy or action appears neutral on the surface, if its objective effect

negatively impacts a particular group, it may still constitute discrimination.

# 9. Apple's Contract Performance Defense

## 9.1. Defendants' Potential Argument

401.    Apple may argue that the promise of compensating the plaintiff with earphones

1  was not legally binding, suggesting that it was merely a "goodwill" gesture rather than a legally

2  enforceable contract.

## 9.2. Plaintiff's Rebuttal

### 9.2.1. Legal Binding Nature of a Clear Promise:

5  402.    Apple's representative made a clear promise to compensate the plaintiff with a

6  pair of earphones, and the plaintiff accepted this offer. This promise meets the requirements for

7  contract formation and is legally binding. Apple's failure to fulfill the promise constitutes a

8  breach of contract.

9  403.    **Case Law Support:** In *Hamer v. Sidway, 124 N.Y. 538 (1891)*, the court held

10  that a promise, if made with clear terms and accepted with valid consideration, constitutes a

11  legally binding contract. This principle supports the argument that the defendant's failure to

12  fulfill its compensation promise may be considered a breach of contract.

### 9.2.2. Protection of Reliance Interests:

14  404.    The plaintiff made reasonable reliance decisions based on Apple's promise,

1    expecting that the earphone compensation would be fulfilled. This reliance interest should be

2    legally protected. Apple's failure to fulfill the promise caused economic and emotional harm

3    to the plaintiff, and they should be held legally accountable.

4    405.    **Case Law Support: In** *Ricketts v. Scothorn, 77 N.W. 365 (Neb. 1898)*, the

5    court ruled that even a goodwill promise can result in contractual liability if reasonable reliance

6    leads to an obligation.

7    **9.2.3. Further Damages:**

8    406.    Due to Apple's failure to fulfill this promise, the plaintiff's trust and expectations

9    were damaged, leading to further emotional distress and anxiety. The plaintiff is entitled to

10    compensation for the losses incurred.

11    407.    **Case Law Support: In** *Hawkins v. McGee, 84 N.H. 114 (1929)*, the court

12    recognized emotional distress as part of the compensation for contract breaches.

13

## 10. Regarding the Defense of Whether the Five Images and 200-Word

## Limit Is Sufficient

**Defendant's Potential Defense:**

**408.** The defendant may argue that the five images and 200-word input limit are

sufficient for users to submit necessary evidence. They may consider this limit

reasonable and adequate for handling standard account appeals.

**Plaintiff's Rebuttal:**

409. **1. The Restriction Is Too Strict:** In my specific case, this limitation is

unreasonable. My situation is complex, involving multiple transactions and a

detailed chain of evidence. The limitation of five images and 200 words is

insufficient to fully convey all the necessary information. According to *Mathews

v. Eldridge*, administrative procedures should consider individual circumstances

and provide flexibility. In my case, this restriction fails to meet the needs of

individualized review and is therefore legally inadequate.

410. **2. The Key and Completeness of Information:** The restriction of five images and 200 words hinders my ability to provide critical information, resulting in certain important evidence not being fully presented. *Goldberg v. Kelly* emphasizes that the complete presentation of evidence is crucial for a fair hearing. If procedural limitations lead to the omission of key information, this may constitute a violation of procedural justice. Therefore, this restriction clearly affects the fairness of the case and should be considered unreasonable.

**Conclusion:**

411.  In summary, this restriction not only caused actual harm to my case but is also legally unacceptable. According to relevant case law, such limitations seriously violate the fundamental principles of procedural justice and should be deemed unreasonable and unlawful.

## 11. Regarding the Defense of Providing a Complaint Email at the

## Time of Final Account Suspension:

**Plaintiff's Rebuttal:**

412. **1. Defendant's Awareness and Serious Negligence:** The plaintiff repeatedly informed the defendant that their account management practices might be illegal and made multiple requests for Chinese language services over the phone. However, despite being aware of these issues, the defendant failed to provide any effective remedies. According to the fundamental principles of procedural justice, the validity of an appeals channel should depend on whether the defendant promptly took reasonable measures to resolve the issues after receiving the plaintiff's feedback. However, despite the plaintiff raising these issues multiple times, the defendant failed to take effective action and only provided a complaint email when the account was finally suspended. Such a formalistic remedy does not compensate for the previous procedural deficiencies and cannot be considered a genuine

163

opportunity for appeal.

413. **2. Invalidity of the Appeals Channel:** *Cleveland Board of Education v.

Loudermill* clearly states that procedural justice requires adequate notice and

opportunity for appeal before making major decisions. The defendant failed to take

action when the plaintiff initially raised concerns, and only provided a limited

appeals channel after making a final decision. This not only contradicts the basic

requirements of procedural justice but also directly led to a significant loss of the

plaintiff's appeal rights. Therefore, the complaint email provided at the time of final

account suspension cannot compensate for previous negligence and cannot be

considered a legitimate or sufficient appeals opportunity.

414. **3. Disregard for Procedural Flexibility:** In *Mathews v. Eldridge*, the Supreme

Court emphasized that procedures should be flexible and take into account

individual needs. In this case, the defendant completely ignored the plaintiff's

reasonable requests due to language barriers and failed to provide appropriate

1    support or adjust procedures to meet the plaintiff's needs. The complaint email

2    provided at the end not only failed to correct previous negligence but also

3    exacerbated the harm to the plaintiff's legal rights. Therefore, the provision of a

4    complaint email does not prove the reasonableness of the defendant's actions and

5    cannot cover up the harm caused by previous procedural errors.

6    **Conclusion:**

7    415.  The defendant, despite being aware of the plaintiff's special circumstances, failed

8    to provide timely and effective remedies. Their actions constitute serious

9    negligence and a clear violation of the basic principles of procedural justice. The

10    final provision of a complaint email is merely a formalistic remedy, which cannot

11    correct prior procedural deficiencies nor be considered a legitimate and sufficient

12    appeals opportunity. The defendant's systemic flaws may affect not only the

13    plaintiff in this case but also other users in similar situations.

14

1

## 11.1. Regarding the Defense of Procedural Appropriateness and Legitimacy

**Plaintiff's Rebuttal:**

416. **1. Lack of Procedural Justice:** Although the defendant may claim that their

actions comply with the company's standard procedures, the existence of standard

procedures alone does not automatically prove their fairness or reasonableness. The

core of procedural justice lies in whether the parties are given adequate notice and

a fair opportunity to appeal. According to *Cleveland Board of Education v.

Loudermill*, procedural justice requires that, before making major decisions, the

parties must be fully informed of the potential consequences and given a reasonable

opportunity to raise objections. In this case, the defendant failed to provide

sufficient notice or explanation before suspending the plaintiff's account and did

not offer the plaintiff a proper chance to appeal. This indicates that, regardless of

whether the defendant followed the so-called "standard procedures," their actions

1    still violate the fundamental principles of procedural justice.

2    417. **2. Reasonableness and Applicability of Standard Procedures:** Even if the

3    defendant's procedures formally comply with their internal standards, this does not

4    prove that these procedures are reasonable or applicable in all circumstances.

5    *Mathews v. Eldridge* emphasizes that procedures should be designed with

6    consideration of individual circumstances and needs to ensure flexibility and

7    fairness. In the plaintiff's specific situation, given the language barriers and unique

8    mental health conditions, the defendant should have taken additional measures to

9    ensure that the plaintiff could understand and participate in the relevant procedures.

10    However, the defendant failed to adjust their standard procedures to meet the

11    plaintiff's needs, resulting in unreasonable and unfair processes.

12    418. **3. Questioning the Effectiveness of the Procedures:** The effectiveness of the

13    defendant's "standard procedures" is itself questionable. Despite the plaintiff

14    repeatedly expressing their difficulties and requests, the defendant failed to take

1    any timely or effective measures to address these issues. This further demonstrates

2    that the defendant's so-called "standard procedures" did not achieve their intended

3    goals in practice—protecting users' rights and providing a fair opportunity to

4    appeal. The appeals channel offered only after the account was suspended can only

5    be seen as a formalistic remedy, insufficient to compensate for prior procedural

6    deficiencies.

7    **Conclusion:**

8    419. The defendant, in handling the plaintiff's account issues, failed to genuinely adhere

9    to the fundamental requirements of procedural justice. Although the defendant may

10   claim that their actions comply with standard procedures, these procedures, in

11   practice, did not fully consider the plaintiff's special circumstances or provide a fair

12   opportunity to appeal. Therefore, the defendant's actions cannot be regarded as

13   reasonable and legitimate but should be recognized as procedurally improper and

14   unjust. Particularly in cases involving such significant special needs, the

1 deficiencies in standard procedures are further highlighted.

## 12. Regarding the Defense of Plaintiff Responsibility

3 **Plaintiff's Rebuttal:**

4 420. **1. Failure of Defendant's Responsibility:** The defendant has a duty to provide

5 clear guidance and support when users encounter issues, especially when users face

6 account suspension due to platform regulations or procedural problems. The

7 plaintiff repeatedly attempted to communicate with the defendant, clearly

8 expressing that due to language barriers and difficulty understanding complex

9 platform rules, they found it challenging to fully comply with these regulations.

10 However, the defendant failed to fulfill its contractual and service obligations by

11 providing sufficient assistance to ensure the user could understand and comply with

12 platform rules. In this case, the responsibility should not be entirely attributed to

13 the plaintiff, but rather to the defendant's improper decisions made in the absence

14 of necessary support.

421. **2. Submitted Evidence Already Meets Requirements:** The plaintiff, based on the defendant's requirements, made every effort to submit all relevant proof and information. However, during multiple reviews, the defendant failed to provide specific feedback or guidance to help the plaintiff correct or supplement any possible deficiencies. *Mathews v. Eldridge* emphasizes that procedures should have some flexibility to ensure that individuals can effectively participate, particularly in submitting evidence and materials. The defendant did not give the plaintiff sufficient opportunities to correct or improve the submitted materials, leading to an unjust and unreasonable process.

422. **3. Plaintiff's Difficulties Were Ignored:** Throughout the process, the plaintiff repeatedly informed the defendant of the difficulties caused by language barriers and mental health issues. However, the defendant did not adjust their standard procedures or provide additional assistance based on these special circumstances, instead continuously requiring the plaintiff to address these issues on their own.

*Goldberg v. Kelly* emphasizes the importance of considering individual

difficulties in procedural justice, especially in cases that may affect fundamental

rights. The defendant's disregard for the plaintiff's special circumstances and

continued application of standard procedures was not only unreasonable but also

reflected a serious failure to fulfill its service obligations.

423. **4. Unreasonableness of Defendant's Actions:** Although the plaintiff may not have

fully complied with platform regulations in certain aspects, this situation largely

resulted from the defendant's deficiencies in procedural design and implementation.

The defendant failed to provide adequate support and did not consider the plaintiff's

special circumstances, ultimately leading to account suspension. Therefore,

attributing full responsibility to the plaintiff is unreasonable. The defendant's

actions should instead be viewed as the primary cause of procedural failure, for

which they should bear the main responsibility.

**Conclusion:**

424. The plaintiff made every effort to comply with platform regulations and submitted

the required materials. The defendant failed to provide the necessary support and

guidance when the plaintiff encountered difficulties, continuing to enforce

unreasonable procedures and blaming the plaintiff for the outcome. The defendant's

actions not only failed to fulfill their contractual obligations but also exacerbated

the plaintiff's difficulties. Therefore, the plaintiff should not bear full responsibility

for the account suspension, and the defendant's actions should be regarded as

procedurally improper and indicative of service negligence. The plaintiff's special

circumstances further highlight the deficiencies in the defendant's fulfillment of

their obligations.

## 13. Regarding the Defense of Multiple Appeal Opportunities

**Plaintiff's Rebuttal:**

425. **1. Actual Effectiveness of the Appeals Channel:** Although the defendant claims

to have provided multiple opportunities to appeal, the actual effectiveness of these

172

opportunities is questionable. The appeals channels provided by the defendant were

not designed or implemented with consideration of the plaintiff's special

circumstances, including language barriers and mental health issues, which

prevented the plaintiff from fully understanding the appeal process or effectively

participating. *Cleveland Board of Education v. Loudermill* emphasizes that

procedural justice requires providing the parties involved with a substantive

opportunity to participate in the appeal process, not merely a formalistic

opportunity. In this case, the appeals channels provided by the defendant failed to

meet this standard and cannot be considered a truly effective remedy.

426. **2. Lack of Support During the Appeal Process:** The plaintiff, while using the

appeals channels provided by the defendant, repeatedly requested Chinese

language services or additional assistance to understand the appeals process and

requirements. However, the defendant failed to provide the necessary support

during the appeal process, making it difficult for the plaintiff to effectively

1    participate in the appeal. *Mathews v. Eldridge* emphasizes that procedural design

2    should be flexible and adapt to the individual's special needs. In this case, the

3    defendant failed to provide adequate support and guidance during the appeals

4    process, resulting in the plaintiff's inability to fully exercise their right to appeal.

5    427. **3. Delays and Insufficiency of Appeal Opportunities:** The defendant may claim

6    to have provided multiple opportunities to appeal, but these opportunities were

7    often provided only after the issue had developed to an irreversible stage. For

8    example, the appeals channels were only provided after the account had been

9    suspended or after the plaintiff's life had been severely impacted. *Goldberg v.

10   Kelly* emphasizes that timing is critical in procedural justice. If the appeals

11   opportunities are provided only after the issue has deteriorated, the significance

12   and effectiveness of these opportunities are significantly diminished. This indicates

13   that the defendant not only delayed the timing of the appeals opportunities but also

14   failed to ensure that these opportunities had substantive effects.

428. **4. Formalistic Nature of the Appeals Procedures:** Even if the defendant provided multiple opportunities to appeal, if these procedures were merely formalistic and did not actually resolve the plaintiff's issues, then these opportunities do not prove the reasonableness of the defendant's actions. Procedural justice requires not only formal opportunities but also that these opportunities have substantive remedial effects. The appeals procedures provided by the defendant at various stages did not resolve the core issues faced by the plaintiff, instead further exacerbating the plaintiff's difficulties. This indicates that the defendant's appeals procedures have serious flaws.

**Conclusion:**

429. The defendant claims to have provided multiple opportunities to appeal, but these opportunities, in actual practice, did not meet the requirements of procedural justice. The defendant failed to provide necessary support during the appeal process, and the delays and formalistic nature of these opportunities prevented the

Case No.:    30/08/2024 Page 175 of 180 PageID #: 171

1    plaintiff from effectively exercising their right to appeal. Therefore, the defendant's

2    actions cannot be considered reasonable and sufficient, but instead highlight

3    serious deficiencies in the design and implementation of the procedures. These

4    deficiencies are particularly evident in the plaintiff's special circumstances, further

5    exposing systemic issues in the defendant's fulfillment of their obligations.

# XI．Exhibits or Appendices

430.    Attached are all the pieces of evidence supporting the complaint, such as contracts,

communication records, medical bills, and more.

431.    Evidence List

| Evidence No. | Description | Status | Remarks |
|---|---|---|---|
| Evidence 1 | Purchase receipts from Amazon showing the dates and items purchased, including iPhone 15 Max and MacBook Pro 2019. | | |
| Evidence 2 | Records of canceled orders, including food and electronics, showing the dates and reasons for cancellation. | | |
| Evidence 3 | ACI gift card purchase receipts and transaction records, showing the purchase time and amount ($1800). | | |
| Evidence 4 | Screenshots of Amazon account suspension notices, including dates and reasons for the suspensions on June 26, 2024, and subsequent dates. | | |
| Evidence 5 | Communication records with Amazon requesting personal information and proof of purchase. | | |
| Evidence 6 | Communication logs with Amazon customer service, including emails and uploaded documents showing proof of purchase and Amazon's responses. | | |
| Evidence 7 | Records of the humanitarian request submitted to Amazon by the plaintiff, requesting the restoration of orders after account suspension. | | |
| Evidence 8 | Medical records from [Hospital Name], documenting plaintiff's visits on July 2, July 5, July 15, July 27, August 6, August 13, and August 19, 2024. | | |
| Evidence 9 | Doctor's diagnosis notes, detailing the impact of account suspension on the plaintiff's mental health, including the use of medication such as Trazodone. | | |

| | | | |
|---|---|---|---|
| Evidence 10 | Police reports related to incidents at the Apple Store in San Francisco on July 27 and July 31, 2024. | | |
| Evidence 11 | Surveillance footage from the Apple Store incidents or other related evidence (if available). | | |
| Evidence 12 | NOID (Notice of Intent to Deny) issued by USCIS on June 25, 2024. | | |
| Evidence 13 | Communication records with Apple showing the company's promise to provide AirPods Pro 2. | | |
| Evidence 14 | Testimony from a psychology expert describing the psychological harm suffered by the tiff due to actions by Amazon and Apple. | | |
| Evidence 15 | Expert analysis report on economic losses, assessing the indirect financial impact of account suspension and order cancellation. | | |
| Evidence 16 | Complaint records from BBB and Consumer Affairs regarding Amazon, showing widespread customer dissatisfaction with Amazon's account management and customer service. | | |
| Evidence 17 | Media reports and industry analysis articles supporting allegations of systemic issues with Amazon and Apple. | | |
| Evidence 18 | Plaintiff's personal statement describing the emotional distress and decline in quality of life during the events. | | |
| Evidence 19 | Costco membership purchase receipt and proof of Apple computer purchase by the plaintiff. | | |
| Evidence 20 | | | |
| Evidence 21 | | | |
| Evidence 22 | | | |
| Evidence 23 | | | |
| Evidence 24 | | | |
| Evidence 25 | | | |

| Evidence 26 | | | |
|---|---|---|---|
| Evidence 27 | | | |
| Evidence 28 | | | |
| Evidence 29 | | | |
| Evidence 30 | | | |

Usage Notes:

432.    Links: Each evidence item includes a cloud link directly embedded within the

description for easy access.

Reserved Spaces:

433.    Five additional slots have been reserved for any future evidence you might need

to add later.

# XII .  Declaration Under Penalty Of Perjury

434. I, <u>Yun Peng</u>,  declare as follows:

    1. I am the plaintiff in this case and have prepared the attached complaint.

    2. I have reviewed the complaint and verify that the facts stated therein are true and

    correct to the best of my knowledge, information, and belief.

    3. This declaration is made in support of my complaint filed in this case.

435. I declare under penalty of perjury under the laws of the United States of America

    that the foregoing is true and correct.

436. Executed on this <u>9</u> day of <u>09</u>, <u>2024</u>, in San Francisco, California.

437. Signature of Plaintiff    _____