YUN PENG
8024 EMERSON PL
ROSEMEAD, CA, 91770
Phone Number 669 329 7691
Email: msma529370228@gmail.com

YUN PENG, IN PRO PER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUN PENG <br><br> Plaintiff(s), <br><br> vs. <br><br> ACI GIFT CARDS LLC; <br><br> AMAZON.COM SERVICES LLC; <br><br> AMAZON.COM, INC. <br><br> Defendant(s). | 25-cv-06944-AGT <br> [Original State Case No.: CGC-24-617965] <br><br> **DECLARATION OF YUN PENG IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS** <br><br> DATE: Oct 24,2025 <br> TIME: 10:00 a.m. <br> DEPT: A 15 Floor |

**I, Yun Peng, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:**

1. I am the plaintiff in the above-captioned action. I have personal knowledge of the facts stated in this declaration, except where stated on information and belief, and if called as a witness, I could and would testify competently thereto.

**CLRA VENUE DECLARATION PURSUANT TO CIVIL CODE § 1780(d)**

2. This declaration is also submitted pursuant to California Civil Code § 1780(d) to establish that this action has been commenced in a county that is a proper place for trial under the

- 1 -

Consumer Legal Remedies Act. The transactions at issue, including the gift card purchases, attempted use of Amazon's services, account suspensions, and resulting injuries, all occurred while I was physically present in California. Defendants regularly transact business in this District through their online platform and retail partnerships throughout Northern California.

**PERSONAL BACKGROUND AND VULNERABILITY**

3. I entered the United States on April 25, 2024, on a B-2 visa with the intention of seeking asylum. I am a Chinese national with limited English proficiency. I cannot read or understand complex English legal documents without assistance from translation tools.

4. I have been diagnosed with anxiety disorder, which I have suffered from for over three years. My condition requires ongoing medication including sertraline and alprazolam. On June 17, 2024, due to worsening symptoms, my doctor prescribed Trazodone, a stronger sedative medication that affects cognitive function and decision-making capacity.

5. Between May and June 2024, I experienced multiple traumatic events that left me in an extremely vulnerable state: a. On May 21, 2024, thieves stole my personal belongings at Stanford University; b. On June 24, 2024, thieves stole my wallet containing my remaining cash at a FedEx store; c. On June 25, 2024, I received a Notice of Intent to Deny (NOID) from USCIS regarding my asylum application, requiring urgent document submission.

**GIFT CARD PURCHASES AND INITIAL ACCOUNT ISSUES**

6. Due to the thefts, I had no cash and needed a way to purchase essential items. In June 2024, I purchased approximately $1,600 in Amazon gift cards through Alipay on Taobao, intending to use them for basic necessities and a computer needed to respond to the NOID.

7. The gift cards I received displayed only Amazon branding. I saw no indication anywhere on the cards or packaging that they were issued by ACI Gift Cards LLC. All instructions directed me to Amazon's website. **As a non-English speaker receiving cards purchased online, I had no opportunity to read, understand, or negotiate any terms and conditions. I reasonably believed I was purchasing Amazon products from Amazon.**

8. On June 26, 2024—one day after receiving the NOID—Amazon suspended my account for "unusual payment activity." The notice provided no specific information about what activity

- 2 -

was considered unusual or which transactions were problematic.

9. I attempted to appeal through Amazon's system but was limited to uploading five images and entering only 200 characters of explanation. There was no option to speak with a human representative, **yet the system messages implied human review with phrases like "we may be able to remove the hold" and "we will review your information," creating the false impression that actual people would consider my humanitarian circumstances.**

**LEGAL WARNING AND HUMANITARIAN PLEA**

10. On June 28-29, 2024, after Amazon failed to respond to my submitted documents, I sent Amazon a formal legal warning letter in English (with assistance) identifying the following legal violations:
    - Federal Trade Commission Act Section 5 (15 U.S.C. § 45)
    - Electronic Fund Transfer Act Section 908 (15 U.S.C. § 1693f)
    - Fair Credit Reporting Act Section 605B (15 U.S.C. § 1681c-2)
    - Gramm-Leach-Bliley Act Section 502 (15 U.S.C. § 6802)
    - California Consumer Privacy Act Section 1798.120
    - California Civil Code Section 1670.5
    - California Business & Professions Code Section 17200
    - Consumer Protection Act provisions

    A true and correct copy of this letter is attached hereto as Exhibit A.

11. Amazon never responded to this legal warning letter.

12. On July 2, 2024, Amazon canceled all my pending orders, including orders for food. In desperation, I sent Amazon a message explicitly stating: **"I am an asylum seeker with no food. Please make a humanitarian exception for food orders."** A true and correct copy of this communication is attached hereto as Exhibit B.

13. Amazon provided no response to my humanitarian plea and proceeded with the cancellations, despite having clear knowledge of my vulnerable status and urgent need for food.

**MEDICAL CONSEQUENCES**

14. Immediately following Amazon's July 2, 2024 order cancellations, I began experiencing severe psychiatric symptoms I had never experienced before, including: a. Panic attacks with rapid heartbeat b. Auditory hallucinations c. Severe insomnia (only able to sleep a few hours per night) d. Feelings of complete despair and helplessness

15. On August 13, 2024, I underwent evaluation at Westside Crisis Services. The evaluation documented **"recent emergence of passive suicidal ideation"** and described me as "feeling exhausted and tormented." A true and correct copy of relevant portions of this medical record is attached hereto as Exhibit C.

16. On August 29, 2024, I received a formal psychiatric evaluation and was diagnosed with **Post-Traumatic Stress Disorder (PTSD) and Bipolar II Disorder**. The psychiatrist determined these conditions required long-term treatment. A true and correct copy of relevant portions of this diagnosis is attached hereto as Exhibit D.

17. I continue to require psychiatric treatment and medication for the conditions that developed following Amazon's actions. The symptoms have severely impaired my ability to work, resulting in two employment terminations since obtaining work authorization in December 2024.

**SECOND ACCOUNT AND CROSS-ACCOUNT TRACKING**

18. Between July 17-27, 2024, still needing access to essential goods, I purchased additional Amazon gift cards totaling approximately $905 from physical retail stores including Walgreens, CVS, and Whole Foods Market, using cash.

19. During these purchases, I attempted to understand the gift card terms using translation tools on my phone. The cards displayed Amazon logos prominently but contained no clear indication that ACI Gift Cards LLC was the actual issuer. **As a non-English speaker purchasing pre-packaged cards at retail stores, I had no meaningful opportunity to review, understand, or agree to any terms. The terms referenced on the packaging were in English, contained in external links I could not access at the point of purchase, and were incomprehensible to me even with translation tools.**

20. I registered a new Amazon account using a different email address (529370228@qq.com)

and loaded these gift cards.

21. On July 29, 2024, Amazon suspended this second account. The system prompted me to submit verification documents to remove the hold, displaying messages such as **"This is required to remove the hold on your account"** and **"If you promptly submit this form and attach supporting documents, we may be able to remove the hold more quickly."** These messages created the clear impression that providing the requested information would lead to account restoration, not permanent closure.

22. I submitted all requested information including my name, address, phone number, bank account information, and photos of the gift cards, believing this would lead to account restoration as the system messages indicated.

23. On August 1, 2024, Amazon permanently closed this second account. Based on the timing and circumstances, I believe Amazon used the verification information I submitted to identify me as the same person from the first account and closed the second account for that reason. **Amazon never disclosed that the verification data would be used for cross-account tracking and punishment rather than account recovery.**

24. As a result of these account closures, I lost access to approximately **$2,505 in total gift card balances** ($1,600 from the first account and $905 from the second account).

**DISCOVERY OF DECEPTIVE PRACTICES**

25. Only after these events did I investigate and discover that: a. ACI Gift Cards LLC, not Amazon, is the actual issuer of the gift cards; b. ACI completely conceals its identity on the gift card packaging; c. Amazon was using the verification data I submitted for purposes other than account recovery; d. The "review" process appeared to be automated rather than involving human review as implied; e. There was no genuine appeal process or human review available despite the system messages suggesting otherwise.

26. As a vulnerable asylum seeker with limited English proficiency, experiencing a mental health crisis, and facing urgent survival needs, I reasonably relied on: a. The Amazon branding on the gift cards to mean Amazon was responsible for them; b. The system messages promising account review to mean genuine consideration of my circumstances; c.

        The verification process to be for account recovery, not for cross-account punishment; d. The existence of some form of human review or appeal process for humanitarian situations.

27. When ACI's attorney responded to my CLRA notice on June 20, 2025, the attorney repeatedly referred to ACI as "Amazon" throughout the letter, demonstrating how confusing and deceptive the relationship between these companies is. A true and correct copy of relevant portions of this letter is attached hereto as Exhibit E.

**CURRENT IMPACT**

28. The loss of $2,505 represented a significant portion of my available resources during a critical period when I was responding to the NOID and trying to establish myself in the United States as an asylum seeker.

29. The psychological trauma from these events continues to affect my daily life, work capacity, and ability to trust digital platforms or engage in normal economic activities. I continue to suffer from PTSD symptoms directly caused by Defendants' actions.

30. I never had any meaningful opportunity to understand, negotiate, or agree to any terms that would authorize Defendants to retain my $2,505 in prepaid funds. Any such terms, if they exist, were procured through deception and exploitation of my vulnerable state.

31. All facts stated above are true to the best of my knowledge and recollection. The attached exhibits are true and correct copies of the documents they purport to be.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 9, 2025, at Rosemead, California.


YUN PENG

_____


**EXHIBITS:**

- Exhibit A - Legal Warning Letter to Amazon (June 28-29, 2024)

- Exhibit B - Humanitarian Plea Communication (July 2, 2024)
- Exhibit C - Westside Crisis Services Medical Record (August 13, 2024) [relevant portions]
- Exhibit D - PTSD and Bipolar II Diagnosis (August 29, 2024) [relevant portions]
- Exhibit E - ACI Attorney Response Letter (June 20, 2025) [relevant portions]

# Exhibit A

**Your company is suspected of violating the following laws:**

1. **Your company's actions are suspected of violating** Section 5 of the Federal Trade Commission Act (FTCA) (15 U.S.C. § 45), engaging in unfair business practices.

2. **Your company's actions are suspected of violating** the Consumer Protection Act, failing to take reasonable measures to ensure fair and transparent transactions, and not providing sufficient explanation and appeal opportunities to consumers.

3. **Your company's actions are suspected of violating** Section 908 of the Electronic Fund Transfer Act (EFTA) (15 U.S.C. § 1693f), failing to follow dispute procedures for unauthorized transactions, including notification and investigation requirements.

4. **Your company's actions are suspected of violating** Section 605B of the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681c-2), failing to provide reasonable investigation and notification when handling identity theft or fraud disputes.

5. **Your company's actions are suspected of violating** Section 502 of the Gramm-Leach-Bliley Act (GLBA) (15 U.S.C. § 6802), failing to provide consumers with notice and choice before sharing personal information.

6. **Your company's actions are suspected of violating** Section 1798.120 of the California Consumer Privacy Act (CCPA), failing to handle consumer information transparently and fairly.

7. **Your company's actions are suspected of violating** Section 1670.5 of the California Civil Code by including unfair terms in the contract.

8. **Your company's actions are suspected of violating** Section 17200 of the California Business and Professions Code, engaging in unfair business practices.

Your company has violated multiple legal fields and international conventions, and has contravened widely recognized principles of consumer protection and fair trade, as follows:

1. **Notification Obligation**:

    The platform should first notify the user of the issue and provide an opportunity to explain. You suspended the account first and then notified.

2. **Appeal Procedure**:

Before taking severe measures, there should be a way to appeal or correct the issue. You also took measures first and then notified.

3. **Proportionality Principle**:

The punishment should correspond to the severity of the violation. Minor violations should not result in direct account suspension. You chose to directly suspend the account.

4. **Graduated Measures**:

Gradual measures such as warnings or temporary restrictions on certain functions should be used instead of direct suspension. You directly suspended the account and canceled the orders.

5. **Evidence Preservation**:

The platform should preserve sufficient evidence to justify its actions. I have not received any evidence from you demonstrating the reasonableness of your actions.

6. **Transparency**:

The process should be transparent, letting the user understand the specific reasons and basis for the actions. I do not know the basis on which you suspended my account.

7. **Contract Performance**:

For confirmed orders, unless there is a major reason, the platform is obligated to fulfill the contract. You have not provided me with any substantial explanation for the reason.

8. **Data Access**:

Even if the account is suspended, the user should be allowed to access their important data. You have not granted me access to my data.

9. **Compliance**:

All these actions must comply with local laws and regulations, especially consumer protection laws. You have violated the laws listed in the first part.

*[signature]*

*25.06.2024*

# Exhibit B

I am extremely angry and disappointed with your company's decision to suspend my account and cancel my orders!

I have already informed you that I purchased the items through a third-party website, Alibaba. Why are you still asking me to provide records of purchases made with the bank card linked to my account on your website?

I have also explained my situation: I am a tourist visiting the United States, and everything here is new to me. I simply bought the items I wanted from Alibaba out of habit. It was only after you suspended my account that I briefly looked into your gift card and website usage policies. I also learned about the legal principles here, which state that whoever makes an assertion must provide the evidence.

This means that if you are claiming that payment irregularities are the reason for suspending my account and canceling my orders, it is your responsibility to prove that I obtained the items illegally. It is not my responsibility to prove that my purchases were legitimate!

Leaving aside the legal aspects, even from a humanitarian perspective, you should not treat me this way. I have been robbed twice here, and now I can't even afford to eat. You should have noticed that my last order was for food. Your actions have put me in a very disadvantageous position. If you were unaware of these circumstances before and have already taken action, then so be it. But now that I have informed you, shouldn't you unlock my account and reinstate my orders?

This message is both a negotiation and a final warning. I am willing to continue communicating with you, but I hope you can provide communication in Chinese. I do not speak English, and all my communications with you have been translated by ChatGPT.

Thank you.

---

# Exhibit C

Westside Crisis Services – Visit Summary (August 13, 2024)
Relevant portions only (sensitive unrelated medical history omitted to protect privacy)

Name: Yun Peng | DOB: */**/1**** | MRN: 2004***** | PCP: T***********, MD | Legal Name: Yun Peng

# Progress Notes

## Dixie Sartorio at 8/13/2024  9:15 AM

**P**: Yun Peng is a 34 year old male who presents as a drop-in, in an unscheduled visit, to Westside Crisis for medication and mental health support. Client does not have access to psychiatric care and needs support in getting medication to help him sleep. Assessment and treatment are medically recommended, in a timely manner, in order to improve level of function and prevent decompensation/hospitalization.
**I**: Assessed for risk. Risk low as client denies Suicidal ideations and homicidal ideations, at time of triage. Checked financial eligibility, client has- medi-cal. Provided active listening and reassurance as client talked about their mental state. Vital signs taken.  This writer met with provider to present chief complaint and pt information.
**R**: Client agrees to meet with provider. Client currently denies SI/HI. No agitation or aggression observed. Able to make needs known. Able to utilize services. Client was appreciative of the services received, saying "thank you" at the end of triage.
**P**: Clt met with provider and left W.S.clinic without incident.

## Whitney Bagby at 8/13/2024  9:15 AM

See Assessment Note

# BHS  Assessment

## Whitney Bagby at 8/13/2024  9:15 AM

**PSYCHIATRIC INTAKE ASSESSMENT**

*English/Mandarin interpreter services utilized during visit.

CC: "I can't sleep."

HPI: Client is a Chinese man with a history of depression, anxiety, insomnia, and impulsivity, seen today at Westside Crisis for psych evaluation and medication management. Client presents to the Crisis Clinic today requesting support with ongoing sleep disturbance sharing that he has only been able to get a few hours of sleep each night, is feeling "exhausted and tormented" by his current symptoms, and shared that he has been waiting to get connected to a psychiatrist, but cannot wait any longer for help. Client reports ongoing AH sharing that he hears "frogs croaking and other noises," stating that they worse at night, and a past history of impulsivity and risk-taking behavior. Client also endorsed recent emergence of passive-SI, without intent, plan, or means due to ongoing feelings of exhaustion.

Client denies lack of concentration or changes in psychomotor function, during visit today client denies distractibility, impulsivity, grandiosity, activity increase, or increased talkativeness. Client denies active-SI/HI/VH, and verbalizes ability to contract for safety while in the community during this encounter. C-SSRS administered during visit today with a negative score, low risk.

  - Constitutional: Endorsed episodes of fatigue, shortness of breath, and heart palpitations due to ongoing insomnia and anxiety. Denies weight loss, fever, rash, chills, change in vision, ear pain, sinus problems, sore throat, leg swelling, cough
  - Neurological: Denies muscle weakness, seizure, numbness, tremor, ataxia, vertigo, headache
  - Gastrointestinal: Denies nausea, vomiting, diarrhea, constipation, painful urination, polydipsia, polyphagia, polyuria
  - Psychiatric: See above.

MSE:
-Orientation: A&Ox4
-Appearance/Behavior: Well-groomed, well-developed Chinese man in no acute distress, psychomotor neutral, normal gait/balance, no tremor/abnormal movements, appropriate eye contact, good rapport.
-Speech: Spontaneous with normal rate, rhythm, volume, tone, and prosody.
-Mood: "I feel bad if I can't have a good night's sleep."
-Affect: Congruent with mood
-Thought Process: Linear and organized
-Thought Content: Unremarkable- no delusions, denies SI/HI
-Insight/Judgment: Fair/Fair
-Cognition: Intact for recent/remote memory, attention and concentration, not formally tested.

Strengths: Supportive family, motivated for treatment, and resilience.

Assessment: Client endorses Unspecified Major Depressive Disorder (F33.9) given presenting with low mood, low energy, sleep disturbance, and self-reported history of depression, anxiety, and insomnia, though further diagnostic clarity needed to rule out Bipolar Disorder given history of impulsivity, disordered thought, and risk-taking behavior. Client would benefit from trial of neuroleptic medication to support mood stabilization and improve current sleep struggles. Will initiate trial of Quetiapine (Seroquel) to target mood, impulsivity, and insomnia, in order to improve level of function and prevent decompensation while in the community. Patient education provided regarding risks v benefits to use of psychotropic medications, possible adverse effects, and alternatives to treatments. Obtained I/C for treatment.

Risk assessment:
Acute risk of DTS/DTO *LOW* due to absence of SI/HI, intent, plan, or means. Chronic risk of DTS *low* due to protective factors of lack of SA history, engagement with care, help-seeking, future-oriented, and strong family connection. Chronic risk of DTO *low* due to lack of known history of violence. Does not meet 5150 criteria. Treatment is medically recommended at this time in order to improve/maintain level of function and prevent decompensation while in the community.

Dx: Unspecified Major Depressive Disorder (F33.9)

Plan:
1. CURES check: No records indicated in the last 12 months

2. Discussed risks/benefits ratio of meds including not taking any meds

3. Medications: Client chose option to fill medications at Genoa Pharmacy on the premises

# Exhibit D

Psychiatric Diagnosis and Treatment – MyChart Visit Summary
September 23, 2024 (Relevant Portions)

Name: Yun Peng | DOB: */**/**** | MRN: 200***** | PCP: T***, MD | Legal Name: Yun Peng

## Progress Notes

### Carolyn Chu at 9/23/2024  2:45 PM

The resident/fellow physician presented this patient's history. I have reviewed relevant historical information and diagnostic results. Together we reviewed this information, formulated a clinical impression or diagnosis for each problem and developed a comprehensive plan for therapy during or immediately following the patient's telephone or video visit. I have approved these. Patient education was received and understanding confirmed by the resident/fellow physician. Additional pertinent information is below:
T/V today (pt has ?temporarily relocated to Santa Monica - has been followed by BH team at Chinatown/NorthBeach who have offered warm hand-off to LA County Behavioral Health)- check in on mood, Rx mgmt

Carolyn Chu, MD

### Tri Tran at 9/23/2024  2:45 PM

PATIENT:  Yun Peng
MRN:  ******
DOB:  */**/****
DATE OF SERVICE:  9/23/2024

PRIMARY CARE PROVIDER: ********, MD

**Telephone Visit**

Interpreter resource used for communication assistance was Medical interpreter in Mandarin (Chinese).
I contacted the patient by phone. I verified the patient's identity by two factors, name and date of birth.
I intend for this telephone encounter to take the place of a face-to-face visit. The risks and benefits of a telephone encounter were discussed. The patient understands the limitations of such a visit and wishes to proceed.
Attendees on the call include (include name and role): ********, MD , Yun Peng

No chief complaint on file.

Yun Peng is a 34 y.o. male w/ BPD II, Insomnia, PTSD, on telehealth for medication adjustment and refill.

Patient currently lives in Santa Monica and the nearest pharmacy to him is CVS on 1411 Lincoln Blvd.

He endorses currently taking 25mg Seroquel qHS, 100mg Sertraline qD, 10mg Buspirone qD. He requested reducing the dose of seroquel to 12.5mg because it was making him a bit drowsy in the morning but it really helps with his inability to sleep.

A/P:

Insomnia
- Defer to Sareen Li for seroquel titration

BPDII
- Defer to Sareen Li for sertraline and buspirone titration

Review of Relevant Systems:
No current SI/HI

Current Medications:
**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • **** | ****** | 180 tablet | 3 |
| • ***** | ****** | | |
| • ****** | ****** | 90 tablet | 3 |
| • ****** | ****** | | |
| • ****** | ****** | | |
| • ****** | ****** | 30 tablet | 1 |
| • ****** | ****** | 30 tablet | 0 |
| • ****** | ****** | 30 tablet | 1 |

No facility-administered medications prior to visit.

Allergies: No Known Allergies

**Assessment & Plan:**

**Problem List Items Addressed This Visit**

   **Anxiety**

Total time spent consulting with this patient: 11-20 min

Provider Counseling: counseled on Depression

# Exhibit E

# K&L GATES

June 20, 2025

K. Taylor Yamahata
Associate
Taylor.Yamahata@klgates.com

T +1 415 882 8024
F +1 415 882 8220

**CONFIDENTIAL**
**SUBJECT TO FED R. EVID. 408**
**VIA EMAIL & FEDEX**

Yun Peng
8024 Emerson Pl
Rosemead, CA 91770-2429

Re:   *Yun Peng v. ACI Gift Cards LLC, et al.*, Case No. CGC-24-617965
Response to Demand Letter

Dear Mr. Peng:

K&L Gates LLP writes on behalf of ACI Gift Cards LLC ("Amazon") in response to your May 20, 2025 Notice of Violation Under the California Consumer Legal Remedies Act letter (the "Letter"), which outlines your allegations concerning Amazon's sale and administration of Amazon gift cards. In the Letter, you allege that Amazon's disclosure of material terms, restrictions, and statutory rights regarding the gift cards is inadequate. Additionally, you contend that both Amazon's appeal process regarding the reinstatement of accounts and consumer privacy rights representations are unfair and misleading. These allegations are substantively identical to the allegations set forth in the *Yun Peng v. ACI Gift Cards, LLC et al*. (Case No. CGC-24-617965) litigation currently pending in the Superior Court of San Francisco.

Amazon denies these allegations, disputes the asserted right to relief, and contends that the proposed claims are factually flawed, legally defective, and fail to support a plausible or meritorious cause of action. As such, Amazon intends to vigorously defend against these claims in the *Peng* litigation. However, Amazon is committed to engaging in a constructive dialogue and looks forward to discussing these matters during the upcoming meet-and-confer in advance of the Case Management Conference scheduled for August 27, 2025.

Yours sincerely

*Taylor Yamahata*

K. Taylor Yamahata